## PRINCE GEORGE'S COUNTY, MARYLAND ET AL.
### *v.* MAYOR AND CITY COUNCIL
### OF LAUREL ET AL.

[No. 385, September Term, 1970.]

*Decided May 14, 1971.*

172

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, FINAN and SINGLEY, JJ.

*Harry W. Lerch* for Maryland-National Capital Park and Planning Commission, part of appellants. *Walter H. Maloney, Jr., Harry L. Durity* and *James F. Sharkey* on the brief for Prince George's County, Maryland, other appellant.

*Russell W. Shipley* for Henry M. Witt et al., part of appellees. *James C. Chapin* for City of Laurel, other appellee.

FINAN, J., delivered the opinion of the Court.

The Maryland-National Capital Park and Planning Commission (Commission) was created in 1927 by Chapter 448 of the Laws of the General Assembly for that year. The law created a district, known then as the Maryland-Washington Metropolitan District, in the

Maryland suburban area contiguous to Washington, D. C., and included in that district approximately all of what is now enclosed by the Capital Beltway in Montgomery and Prince George's counties. Throughout the years, exclusive authority for parks, planning, and zoning within this district was vested in the Commission and the Boards of County Commissioners of the two Maryland counties.

In 1939, the park and planning functions in the district were separated, and the Maryland-Washington Regional District (Regional District) was created as the planning and zoning district. Between 1931 and 1965, the Maryland General Assembly expanded the Regional District on some ten occasions, so that it now includes all of Montgomery County and Prince George's County except for the Town of Laurel, Maryland. Also, in Montgomery County a few older municipalities were granted planning and zoning authority by the Legislature, notably Rockville and Gaithersburg.

On April 1, 1968, Laurel (one of the appellees in this appeal) annexed approximately 498 acres of land, and approved certain zoning classifications for this area. At the time of the annexation and rezoning, the property in question was part of, and was situated within, the borders of the Regional District. Laurel's actions were the source of some dismay to the Board of County Commissioners for Prince George's County and the Commission (appellants), both of which refused to give any recognition to the attempted rezoning. The appellees then sought a declaratory judgment as to Laurel's right to rezone the land in controversy.

The Circuit Court for Prince George's County (Loveless, J.) rendered an opinion and decree, holding (1) that the Town of Laurel has exclusive planning and zoning authority over the annexed property and that neither of the appellants has such authority, (2) that the appellants retained jurisdiction and power over the acreage in question as to building regulations, subdivision

approval, street names and house numbers, and (3) that Chapter 373 of the Laws of 1965, which repealed and re-enacted Chapter 484 of the Laws of 1961 (which had expanded the Regional District to include the disputed acreage) was unconstitutional as violative of Article XI-E, section 1, of the Maryland Constitution. We affirm that portion of the lower court's opinion which relates to the authority of the Town of Laurel, the Commission and the Board of County Commissioners for Prince George's County, and reverse that portion treating upon the constitutionality of Chapter 373 of the Laws of 1965.

Before reaching the merits of this case there is *in limine* a question which must be answered arising from the following interesting sequence of events. After the filing of briefs by all parties to this action Walter H. Maloney, Jr., Esq., County Attorney for Prince George's County, Maryland, a body corporate and politic, successor to the Board of County Commissioners for Prince George's County, Maryland, filed a line of dismissal on March 29, 1971, as to Prince George's County. On April 1, 1971, the Court of Appeals dismissed the appeal as to the County. Thereafter, on April 5, 1971, the appellees moved to dismiss the entire appeal on the premise that the issues presented were moot in the light of the dismissal of the appeal by Prince George's County. On April 8, 1971, this Court heard oral argument of the remaining parties on the motion to dismiss, as well as on the merits of the appeal. On April 20, 1971, Lionel Lockhart, Esq., purportedly acting as special counsel to the County Council for Prince George's County, moved to strike the line of dismissal. Thereafter, on the 23rd day of April, 1971, this Court ordered that the line of dismissal filed by Mr. Maloney, as County Attorney, be stricken and that Prince George's County be reinstated as a party to the appeal. Subsequently, Prince George's County, through Mr. Maloney, filed opposition to the motion to strike the line of dismissal, but this was filed after the line of dismissal had been struck and Prince George's

County reinstated as a party. The theory behind Mr. Maloney's action is that with Prince George's County no longer a party to the suit, the Commission has no authority or standing to continue with this appeal. As we see it, there is no need for this Court to determine in this case whether or not Prince George's County, Maryland, a body corporate and politic, should, or should not be a party to this suit or whether the County Council of Prince George's County has, or does not have, the authority to countermand Mr. Maloney's actions; for the simple reason that on the strength of *Planning Commission v. McCaw*, 246 Md. 662, 229 A. 2d 584 (1967), we are of the opinion that the Maryland-National Capital Park and Planning Commission, in its own right, has sufficient interest in this action to maintain the continuation of the appeal. In *Planning Commission v. McCaw*, wherein the standing of the Commission's capacity to sue was challenged, Judge Oppenheimer, writing for the Court, stated:

"The threshold question, raised by the appellee's motion to dismiss, is whether the Commission has standing to appeal. The appellee contends that the Commission is not a party, within the requirement of Code (1957) Article 5, section 6, because it has not shown a direct interest in the subject matter of the litigation. That section of the Code provides that any party may appeal from any final decree entered by a court of equity. Under it, appeals are permitted by parties of record and also persons who were directly interested in the subject matter of the suit. See *First Union Savings & Loan v. Bottom*, 232 Md. 292, 295, 193 A. 2d 49 (1963), and cases therein cited. The test of standing here involved is broader than that involved in zoning cases, where ordinarily an appeal from a decision of the administrative agency can only be taken by an aggrieved party who not only has a specific

interest or property right affected but is personally and specially affected in a way different from the effect upon the public generally. *Jahnigen v. Staley*, 245 Md. 130, 225 A. 2d 277 (1967) ; *Alvey v. Hedin*, 243 Md. 334, 339, 221 A. 2d 62 (1966) ; *Dubay v. Crane*, 240 Md. 180, 185, 213 A. 2d 487 (1965), and cases therein cited. * * *.

"Under explicit statutory provisions, the Commission is a representative of the public in matters such as are here involved. It is empowered to make general plans for the physical development of the District and in doing so, is expressly made the representative of the State. Code of Public Local Laws of Prince George's County, sections 59-68, 59-69 (1963). * * *." 246 Md. 669-670.

Accordingly, recognizing the authority of the Commission to continue with this appeal, we shall consider the merits of the case.

### Statutory Interpretation

The first of the appellants' objections to the lower court's ruling centers around the interpretation of Article 23A of the Maryland Code entitled "Corporations—Municipal," and a discussion of the pertinent provisions of that Article would be appropriate at this juncture of the opinion.

In 1954, Article XI-E of the Maryland Constitution, known as the Municipal Home Rule Amendment, was enacted by the General Assembly and ratified by the voters. The following year, Chapter 423 of the Laws of 1955 was enacted to implement Article XI-E and to provide a method for home rule for municipalities. This statute was codified as Sections 9 through 43 of Article 23A of the Code.

In 1955, Section 9 (c) of Article 23A read as follows:

"(c) *Limitations on charter amendments.*—

178

No municipal corporation which is subject to the provisions of said Article 11E shall so amend its charter or exercise its powers of annexation, incorporation or repeal of charter as to affect or impair in any respect the powers relating to sanitation, including sewer, water and similar facilities, and zoning, of the Washington Suburban Sanitary Commission or of the Maryland-National Capital Park and Planning Commission." Maryland Code (1951 Ed.), Art. 23A, § 9(c) (1955 Supp.).

The portion of Section 19 of Article 23A (subtitled "Annexation") which is pertinent to this decision read as follows in 1955:

"(p) *Exercise of planning and zoning jurisdiction in certain areas not authorized.*—The powers granted to municipal corporations by Article 11E of the Constitution, by this Article, and by Article 66B (of the Code), shall not be deemed to authorize any municipal corporation, either through procedures under this subheading or other changes in its charter, to exercise planning (including subdivision control) and zoning jurisdiction or power within any political subdivision in which such planning and zoning jurisdiction or power, or either, is exercised by any State, regional or county agency or authority." Code (1951 Ed.), Art. 23A, § 19(p) (1955 Supp.).

It is clear that in 1955 the Legislature intended that no municipal corporations were to exercise powers of annexation, zoning, or planning in such a manner as to interfere with the powers on jurisdiction of the Commission or "any State, regional or county agency or authority."

Two years later, Chapter 197 of the Laws of 1957 was enacted. This chapter repealed and re-enacted Section

9 (c) and Section 19 (p) of Article 23A, and added the following identical exception to each section:

> "Except that where any area is annexed to a municipality authorized to have and having then a planning and zoning authority, the said municipality shall have exclusive jurisdiction over planning and zoning within the area annexed; provided that nothing in this exception shall be construed or interpreted to grant planning and zoning authority to a municipality not authorized to exercise such authority at the time of such annexation." Code (1966 Repl. Vol.), Art. 23A, §§ 9 (c), 19 (p).

A reading of sections 9 (c) and 19 (p) as they were originally enacted, coupled with the amendment added to each section in 1957, indicates that the Legislature intended to protect the zoning rights of municipalities having a planning and zoning authority and to extend their jurisdiction into areas which the municipality annexed or had authority to annex. In fact, section 9 (c), as finally re-enacted in 1957, specifically mentions the Maryland-National Capital Park and Planning Commission and indicates that a qualified municipality (i.e., one "authorized to have and having then a planning and zoning authority") which annexed property within the Regional District "shall have exclusive jurisdiction over planning and zoning within the area annexed." [1] Were these the only pertinent sections of the Code, they would appear to answer the question before us and summarily dispose of the appellants' contention that the City of Laurel had no power or authority to zone in the annexed territory.

However, the appellants claim that two other sections

---

1. It was stipulated by all parties that Laurel "was authorized to have, and did have, planning and zoning authority and was administering planning and zoning functions within its city limits prior to April 24, 1961." The Town of Laurel is the only one of the twenty nine incorporated municipalities in Prince George's County which was granted and now exercises planning and zoning powers.

180

of Article 23A sustain their position, namely section 9(a) and section 2. The pertinent portion of section 9(a) reads:

"* * * The term [municipal corporation] is not to include any special tax area or district, sanitary district, park or planning district, soil conservation district or other public agency exercising specific powers within a defined area but which does not exercise general municipal functions and the term is not to include the mayor and city council of Baltimore. *Nothing herein contained shall be construed to confer upon any municipal corporation,* as herein defined, *located within any such tax area or district, the power* by incorporation, charter amendment, annexation or otherwise *to exercise* or perform, divest or duplicate, *within its corporate limits any of the special powers or duties theretofore conferred upon the board, commission, authority or public corporation* * * *." (Emphasis supplied.) Code (1966 Repl. Vol.), Art. 23A, § 9(a).

The appellants correctly point out that this section, first enacted in 1955 with the original portions of sections 9(c) and 19(p), has never been repealed and remains in effect today. However, it lends little support to their position. The section limits the powers of municipal corporations "located within any such tax area or district" and Laurel is specifically excluded from the Regional District.[2] Whatever limitations are to be found in section 9(a) of Article 23A do not restrict Laurel's right to exercise planning and zoning authority within its corporate boundaries.

A more interesting argument is presented with regard to section 2 of Article 23A. The appellants contend that this section acts as a limitation on all of Article 23A

2. Chapter 373, Laws of 1965, about which more will be said later.

and prohibits Laurel from rezoning the disputed property. Section 2 was enacted as Chapter 731 of the Laws of 1947, as follows:

> "The legislative body of every incorporated municipality in this State, except Baltimore City * * * shall have general power to pass such ordinances not contrary to the public general or public local laws and the Constitution of Maryland as they may deem necessary * * *; *but nothing in this article shall be construed to authorize the legislative body of any incorporated municipality to pass any ordinance which is inconsistent or in conflict with any ordinance, rule or regulation passed,* ordained or adopted *by the Maryland-National Capital Park and Planning Commission* and the Washington Suburban Sanitary Commission * * *." (Emphasis supplied.) Code (1966 Repl. Vol.), Art. 23A, § 2.

Inasmuch as this section has not been repealed, it is still in effect, and the appellants urge that it is yet another bar to Laurel's actions. We cannot agree. A reading of Article 23A as a whole and a study of its legislative history both militate against such a conclusion.

The title to Chapter 731 of the Laws of 1947 (Article 23A, § 2) indicates that it was "to relate, *generally,* to the powers, duties and rights of municipal corporations in this State." (Emphasis supplied.) And, the statute included the general terms and restrictions quoted above. Immediately after that section, came the following:

> "In addition to, but not in substitution of, the powers which have been, or may hereafter be, granted to it, such legislative body [of an incorporated municipality] also shall have the following express ordinance-making powers:
>
>     *     *     *
>
> "(30) *Zoning.*—To provide reasonable zon-

ing regulations subject to the referendum of the voters at regular or special elections." Code (1966 Repl. Vol.), Art. 23A, § 2.

In 1947, Article 23A consisted solely of what is now Sections 1 through 5 of the Article. A fair reading of the statute as it existed then indicates that municipalities were to be given a general power to pass ordinances, including reasonable zoning regulations, as long as those ordinances were not inconsistent with or in conflict with any ruling of the Maryland-National Capital Park and Planning Commission. Eight years later, Sections 9 through 43 of Article 23A were enacted, providing for statutory municipal home rule and dealing more specifically in Section 9(a) and the original portions of Sections 9(c) and 19(p) with conflicts between municipalities and larger governmental agencies such as are presented in this appeal. Again in 1957, as we have previously noted, the Legislature addressed itself even more precisely to the particular question presented, and granted pre-eminence in planning and zoning to certain municipalities (e.g. Laurel) over areas which they might annex.

It is a primary rule of statutory construction that implied repeals of statutes are not favored, and will be found only when absolutely necessary because a later statute is so inconsistent with, or repugnant to, an earlier one that the two cannot stand together. *City of Bowie v. Washington Suburban Sanitary Commission,* 249 Md. 611, 618, 241 A. 2d 396 (1968). It is equally well settled that where two provisions of an act appear to be inconsistent or contradictory, all parts of the statute must be read together in an effort to reconcile and harmonize them, if possible. *Unsatisfied Claim and Judgment Fund Board v. Bowman,* 249 Md. 705, 709, 241 A. 2d 714 (1968); *McConihe v. Comptroller,* 246 Md. 271, 275, 228 A. 2d 432 (1967); *Maryland Industrial Development Financing Authority v. Meadow-Croft,* 243 Md. 515, 521, 221 A. 2d 632 (1966). And, where there is both general and spe-

cific language in a statute, the general language may be controlled by the more specific. *Rafferty v. Comptroller,* 228 Md. 153, 158, 178 A. 2d 896 (1962). When a statute expresses both a general and a particular intention, and the particular intention is apparently incompatible with the general, the particular intention may be considered as an exception to the general one. *Stockett v. Bird,* 18 Md. 484, 489 (1862). We think it reasonable to so view the apparently conflicting sections of Article 23A. Sections 9(c) and 19(p) worked no repeal of section 2, but rather created an exception, so that a reading today of all the pertinent sections of Article 23A conveys the distinct impression that the Legislature generally intended that where ordinances of municipalities and the Commission come into conflict the authority of the Commission shall prevail, with the particular exception stated in the second half of Sections 9(c) and 19(p) granting protection to the zoning rights of certain municipalities over areas which they might annex.[3]

It has been said that the provisions of Article 23A and Article 66B of the Maryland Code are to be read together when their provisions relate to the same subject mat-

---

3. In this connection, it should be noted that Chapter 596 of the Laws of 1957 added to the Regional District all areas in Montgomery County which were previously excluded. The title of that Chapter stated that it was an act "* * * to provide that certain provisions of the Maryland-Washington Regional District Act shall not apply within the area of municipal corporations subject to Article 11E of the Constitution lying in whole or in part within the area hereby added to the said District." The act then went on to provide that neither the Commission nor the Montgomery County authorities were to exercise "any planning or zoning power or jurisdiction" within the area of any municipal corporation "lying in whole or in part within the area hereby added to the Maryland-Washington Regional District * * *."
This serves to buttress the interpretation which we have given to Article 23A. As was noted by Judge Loveless in his opinion:

"Consequently, considering Chapter 596 [of the Acts of 1957] with Chapter 197 of the Acts of 1957, we see an apparent clear legislative intent to permit municipalities in Montgomery County to retain and possess planning and zoning authority; and certainly from Article 23A, Sections 9(c) and 19(p), these municipalities would have this power in Prince George's County areas which were not in the Regional District."

ter, and especially so when a municipality zones for the first time in the course of annexing land. *City of Annapolis v. Kramer,* 235 Md. 231, 234, 201 A. 2d 333 (1964). This brings us to the appellants' next contention, which is that the provisions of Article 66B, § 7.02 will allow them to prevail.

Essentially, the appellants' argument is that section 7.02 limits the zoning "powers of municipalities within the Regional District" to the terms of the Regional District Act, and therefore limits the grant of zoning power found in section 4.01 of Article 66B. The pertinent portion of Article 66B on which the appellants rely reads as follows:

"* * * insofar as the provisions of this article may be inconsistent with or contrary to the provisions of Chapter 992 of the Laws of Maryland of 1943, as amended [Maryland-Washington Regional District Act]; such provisions shall have no application within the Maryland-Washington Regional District, but nothing contained herein shall be deemed or construed to affect the validity of Chapter 992, as amended * * *." Code (1970 Repl. Vol.), Art. 66B, § 7.02.

It is of significance to note that section 7.02 of Article 66B was formerly codified as section 35 of that Article and the entire Article was originally enacted in 1933 as the State's first statewide zoning law (Ch. 599 of the Laws of 1933). At that time section 26 of the original law treated upon the question of conflicts with other laws and ordinances, and like the present law, and in identical language, it recognized the pre-eminence of the Maryland-Washington Regional District (then the Metropolitan District) in Montgomery and Prince George's Counties. The pertinent section (26) of the original act provided in part: "that insofar as the provisions of this act [Ch. 599] may be inconsistent with or contrary to

the provisions of Chapter 448 of the Laws of Maryland of 1927 [which created the Commission], as amended, such provisions shall have no application within the Maryland-Washington Metropolitan District, but nothing contained herein shall be deemed or construed to affect the validity of said Chapter 448 * * *."

Keeping the above language of Article 66B, section 7.02 (which has remained substantially the same throughout the various amendments of the Article since 1933) in mind, it is revealing to note that with the knowledge of the existence of this language in Article 66B, section 7.02, the Legislature, nonetheless, in enacting the latest amendments to Article 23A, sections 9(c) and 19(p) in 1957 (Ch. 197), was careful to provide for the exception which permitted "a municipality authorized to have and having then a planning and zoning authority" to have "exclusive jurisdiction over planning and zoning within the area annexed * * *."

It is further essential to keep in mind that whether one's attention be focused on Article 66B or Chapter 373 of the Laws of 1965 (both of which seek to preserve the integrity of the Maryland-Washington Regional District), the Town of Laurel is not within the Regional District. Chapter 373 of the Laws of 1965 expanded the Regional District to include certain areas of southern Prince George's County with which we are not presently concerned. The Act simply repealed and re-enacted Chapter 484 of the Laws of 1961, and read as follows:

"57(b) Prince George's County—The entire area of Prince George's County is within the Regional District, *with the exception,* however, of the *Town of Laurel,* as its corporate boundaries are defined as of April 24, 1961. *No municipal corporation within the areas added by this subsection to the Maryland-Washington Regional District* shall be authorized, by means of an amendment to its charter or otherwise, to ex-

ercise any of the powers relating to planning, subdivision control and/or zoning now or hereafter granted by the said Maryland-Washington Regional District Act to the Maryland-National Capital Park and Planning Commission or the County Commissioner of Prince George's County." (Emphasis supplied.) Chapter 373, Laws of 1965.

The appellants urge that this Act placed a restriction on zoning of any of the areas within the Regional District (which includes the disputed acreage in this appeal) by municipalities. However, a reading of the statute shows clearly that it was a restriction on zoning by *municipalities within the Regional District,* and that Laurel was specifically excluded from the Regional District. It was a restriction on possible *action by municipal corporations* within the boundaries of the Regional District rather than a limitation on actions to be taken with regard to *property located within the Regional District.*

Indeed, if one were to reason that Laurel were exempt from the workings of the law *only* to the extent of its boundaries of April 24, 1961, and that when it annexed the acreage in question it became a municipal corporation "within the area of the Regional District" by extending those boundaries into the Regional District, one comes to the somewhat absurd conclusion that Laurel would thereby lose *all* of its zoning and planning authority because of the annexation, inasmuch as the act prohibits planning and zoning by any municipal corporation within the Regional District in Prince George's County. Such an interpretation of the statute would run counter to the rather consistent intention shown throughout the statutes that Laurel was to be specifically exempted from the restrictions imposed by the Acts. What the Legislature intended by Chapter 373 of the Laws of 1965 (and Chapter 484 of the Laws of 1961) was basically what it had earlier said in sections 9(c) and 19(p)

of Article 23A—that the Commission is to prevail in matters of planning and zoning, except for instances of municipalities having a planning and zoning authority. In the case of Chapter 373, Laurel was specifically excluded from the boundaries of the Regional District, and by implication, from the restrictions of that law.

In view of what we deem to be appropriate statutory construction, we agree, as we have already indicated, with the conclusion reached by the learned judge below that Laurel, in Prince George's County, was to have similar planning and zoning powers to those retained by Rockville and Gaithersburg in Montgomery County.

## Constitutional Considerations

Moving on to the lower court's finding that Chapter 373 of the Laws of 1965 (which had the effect of enlarging the Maryland-Washington Regional District to include all of Prince George's County, with the exception of the Town of Laurel) was unconstitutional, we hold this determination to be erroneous. We would first point out that the learned judge could have basically arrived at the same conclusion as he did regarding the zoning powers of the Town of Laurel by way of statutory construction, as this Court has done, without the necessity of reaching a constitutional issue. In *Middleman v. Maryland-National Capital Park and Planning Commission,* 232 Md. 285, 289, 192 A. 2d 782 (1963), Judge Henderson (later Chief Judge), writing for the Court, admonished, "It is, of course, the established rule that courts do not decide constitutional issues if the case can be decided on other grounds." However, the lower court having decided that Chapter 373 was unconstitutional, we find it incumbent upon us to state the reasons why we find this holding to be wrong.

The lower court predicated its finding on the language found in Article XI-E, section 1, of the Constitution of Maryland, which provides that all laws enacted by the

Legislature in "relation to the * * * government, or affairs of any such municipal coporation" shall be "by general laws which shall in their terms and in their effect apply to all municipal corporations * * *." The court further reasoned that, while acts affecting the Maryland-National Capital Park and Planning Commission are general laws, nonetheless, Chapter 373 of the Laws of 1965 applies only to a section of one county (Prince George's and more particularly the City of Laurel) and therefore it violates the constitutional mandate expressed in Article XI-E.

The lower court, while recognizing that acts affecting the Commission are general laws, a conclusion borne out by past decisions of this Court (*City of Bowie v. Washington Suburban Sanitary Comm.*, 249 Md. 611, 241 A. 2d 396 (1968); *Middleman v. Maryland-National Capital Park and Planning Commission*, 232 Md. 285, 192 A. 2d 782 (1963)), erred in failing to find Chapter 373 to be a valid general law. The lower court assumed that because the language of Chapter 373, which expanded the Regional District to include all of Prince George's County (with the exception of Laurel), pertained in this instance to one county, it inherently violated the qualifications placed on a general law. This assumption ignores the fact that, although in the instant case the boundary amendment expanding the area of the Regional District (Ch. 373) by necessity applied to only one county and one section of the total area encompassed by the Regional District, yet it was legislation which formed an integral part of the entire bi-county scheme (i.e., the Regional District). In view of the thrust of our decisions in *City of Bowie, supra, Middleman, supra, Baltimore Transit Co. v. Metropolitan Transit Authority*, 232 Md. 509, 194 A. 2d 643 (1963), and the language in *Dasch v. Jackson*, 170 Md. 251, 183 A. 534 (1936) and *State v. Stewart*, 152 Md. 419, 137 A. 39 (1927), we do not think that Chapter 373, by enlarging the boundaries of the bi-county District in one county or by its singular

mention of Laurel violates that prohibition in Art. XI-E, section 1 of the Constitution which states that the General Assembly "shall not pass any law relating to * * * municipal corporations * * * which will be special or local in its terms or in its effect * * *."

In *Baltimore Transit Co.*, an issue analogous to that now presented was before this Court. One of the questions raised was whether a statute pertaining to a mass transportation system in the Baltimore metropolitan area, i.e., the Metropolitan Transit Authority, was a "local law" impinging upon the City of Baltimore's charter power to license and regulate street railways and other public conveyances. The decision stands for the proposition that although a law might apply to or in a municipality it is not for that reason a local law and barred by a constitutional prohibition against local legislation affecting a charter municipality. The question must be decided in the light of the full purpose and effect of the law under consideration; and this Court held it was not a proscribed local law:

> "It seems clear to us that Article 64B is not a local law within the meaning of Article 11A. It is not 'exclusively local to Baltimore,' nor is it 'exclusively local' to those portions of Baltimore County encompassed within the 'area' in which MTA is operative. Therefore, any attempt to legislate for the entire 'area' by the authorities of either Baltimore City or Baltimore County would be ineffective. And, since certain of the provisions of Article 64B relate to 'subject(s) covered by the express powers' granted to Baltimore City and also to those granted to Baltimore County, the General Assembly would not have authority to legislate for the 'area,' if such legislation were local laws within the purview of Section 4 of Article 11A. With the large and thickly settled metropolitan districts of Mary-

land adjacent to Baltimore City and Washington, D. C., it seems particularly appropriate that some legislative body should have authority to legislate for 'areas' comprising at least a portion of two or more of the 'geographical sub-divisions' named in Section 4." 232 Md. at 520.

In *Dasch, supra,* at page 260, our predecessors stated the proposition that a law which affects persons residing beyond a municipality could hardly be a local law. See also *Denhard v. Baltimore,* 167 Md. 416, 422, 173 A. 267 (1934) ; *Gaither v. Jackson,* 147 Md. 655, 667, 128 A. 769 (1925).

Finally, the lower court, while concluding that the Town of Laurel has exclusive planning and zoning authority over the annexed area, found nothing under the "Express Powers Act" (Article 23A of the Code) or elsewhere which diminished the jurisdiction of the Maryland-National Capital Park and Planning Commission or Prince George's County with respect to building and subdivision regulations and controls. While a division of authority over matters which are so related and germane to one another as planning and zoning on one hand, and the regulation of building permits and subdivisions on the other, might lead to occasional frustrations on the part of the administering officials, yet the Town of Laurel appeared not to protest this result very much, either in its brief or upon oral argument. We see no need to disturb the lower court's holding on this point. Accordingly, we affirm all of the rulings of the court below with the exception of its holding that Chapter 373 of the Laws of 1965, as amendatory of Chapter 780 of the Laws of Maryland of 1959, as amended, was unconstitutional, which latter holding we reverse.

In *Bowie v. Washington Suburban Sanitary Commission, supra,* Chief Judge Hammond imaginatively cast the adversaries in the role of David (City of Bowie) and Goliath (the Washington Suburban Sanitary Commis-

sion) and noted that contrary to the biblical story, in that particular case it was Goliath who took the measure of David. Some three years later, we follow scripture and allow David (Laurel) to prevail.

> *Decree affirmed in part and reversed in part and case remanded for the passage of a decree in conformity with the holdings set forth in the above opinion. Appellants to pay costs.*