# MARYLAND-NATIONAL CAPITAL PARK AND PLANNING COMMISSION ET AL. *v.* CITY OF ROCKVILLE ET AL.

[No. 310, September Term, 1972.]

*Decided June 5, 1973.*

The cause was argued before BARNES, McWILLIAMS, SINGLEY, SMITH and LEVINE, JJ.

*Sanford E. Wool, Deputy General Counsel,* with whom were *Robert H. Levan, General Counsel,* and *James W. Tavel, Assistant General Counsel,* on the brief, for appellant Maryland-National Capital Park and Planning Commission.

*Stephen P. Johnson, Assistant County Attorney,* with whom were *Richard S. McKernon, County Attorney, Alfred H. Carter, Deputy County Attorney,* and *Stephen J. Orens, Assistant County Attorney,* on the brief, for appellant Montgomery County, Maryland.

*Roger W. Titus, City Attorney,* for appellee Mayor and Council of Rockville. *David E. Betts* for appellees HMC Enterprises, Inc., et al.

BARNES, J., delivered the opinion of the Court.

This appeal comes to us from the order of the Circuit Court for Montgomery County, in Equity (Shure, C. J.), sustaining the demurrers of the appellees and defendants below, Mayor and Council of Rockville, Maryland (Rockville) and HMC Enterprises, Inc. and Ronald Creamer and David M. Blum, Trustees (collectively, HMC), to the bill of complaint filed by the appellants and plaintiffs below, The Maryland-National Capital Park and Planning Commission (the Commission) and Montgomery County, Maryland (the County). The appellants sought declaratory relief pursuant to the Uniform Declaratory Judgments Act in regard to the construction of Chapter 116 of the Laws of 1971, as amended, with respect to the authority of Rockville to rezone certain annexed land, or any part of it, to a zoning classification substantially different from that of the Master Plan of the County. The appellants also prayed for injunctive and other relief.

We have concluded that the lower court erred in sustaining the demurrers so that its order will be reversed and the case remanded for the filing of answers and further proceedings in regular course.

The allegations of the bill of complaint identify the parties as follows: The County is a municipal corporation with a charter form of government under the provisions of Article XI-A of the Maryland Constitution; the Commission is a corporation, public and politic, which by Chapter 780 of the Laws of 1959, as amended (Chapter 780), has planning jurisdiction over that part of the Regional District located in

both the County and Prince George's County; Rockville is a municipal corporation organized and existing under the provisions of Article XI-E of the Maryland Constitution; HMC is the owner of a tract of land containing 174.8176 acres which was annexed and rezoned by Rockville on January 25, 1972 (Creamer and Blum are Trustees under a purchase money mortgage upon the land in question).

The petition, with its accompanying exhibits, alleges that Rockville adopted a series of resolutions on January 25, 1972, which infringe on the appellants' planning and zoning jurisdiction. Exhibit A is a copy of Resolution No. 5-72 of Rockville, which provides for the annexation of the 174.8176 acre tract. The tract is generally described as being located west of Great Falls Road, south of proposed Ritchie Parkway and generally west and south of existing corporate boundaries and formerly known as the Scott Farm (the subject property). The amendment to the Charter of Rockville to provide for the annexation of the subject property gives an elaborate metes and bounds description of that property, subject to certain easements, and to all other easements, rights-of-way or covenants of record. Section II of the Resolution is, in relevant part, as follows:

"That all of the territory hereby annexed to the City of Rockville and the persons residing thereon, shall, after the effective date of this resolution be subject to all the laws, ordinances and regulations of said City and annexation of the territory shall be subject to the following conditions:

"(a) The tract be developed only as a planned residential unit and that no other type of development be permitted; and

"(b) That the total number of dwelling units in the development not exceed five hundred eighty-three (583). For the purposes of this subsection, the term 'dwelling unit' shall be defined on the date of the passage of this Resolution by Section 6-2.04(35) of the Laws of Rockville."

The bill of complaint further alleges that by Resolution No. 4-72 (Exhibit B), the Mayor of Rockville was authorized

to execute a contract on behalf of Rockville with the owners of the subject property concerning the manner of development and the number of units to be developed within the subject property. An agreement, dated January 21, 1972, between HMC Enterprises, Inc. and Rockville that the subject property would be developed in accordance with the Planned Unit provisions of the Rockville Zoning Ordinance was filed as Exhibit C. Ordinance No. 2-72 of Rockville, also passed, placed the subject property in a zone classification under the Rockville Zoning Ordinance with an appropriate map (Exhibits D and E). Resolution No. 6-72 (Exhibit F) approved a Planned Residential Unit Development in the nature of a special exception for the subject property in accordance with "Plan A." Plan A proposed "the construction of 583 dwelling units in a subdivision consisting of 140 sale townhouse units, 64 rental townhouse units, 130 rental apartment units, and 249 single family units, and such recreational and other amenities as are in keeping with the planned residential unit concept . . . ." A copy of the minutes of the City Council of Rockville of January 25, 1972, authorizing these various actions was filed as Exhibit G.

The bill of complaint then alleges that immediately prior to the annexation of the subject property within the Regional District of the County, that property "was subject to the planning jurisdiction of the Commission and the District Council and subject to the zoning jurisdiction of the District Council."

Paragraph 16 is as follows:

"That on January 25, 1972, there was in effect a Master Plan for the Vicinity of Rockville, Part 1, duly adopted by the Commission on April 26, 1961 and a Master Plan for Potomac-Travilah and Vicinity duly approved by the District Council for Montgomery County, Maryland and duly adopted by the Commission on January 25, 1967; that such plans recommended the zoning classifications of R-R, Rural Residential and R-150, Density Control Development, one-family, detached, restricted residential for all the subject property, part of which is within the Potomac-Travilah Planning

Area, as shown on Exhibit H attached hereto and made a part hereof, and part of which is within the Rockville Planning Area as shown on Exhibit I attached hereto and made a part hereof."

Copies of the Regulations for the R-R zone and for the R-150 zone are attached as Exhibits J and K.

It is alleged in Paragaph 19:

"That the General Assembly of Maryland, by Chapter 116, Laws of Maryland 1971, amended Article 23A, Annotated Code of Maryland, Section 9(c) effective April 23, 1971 as an emergency measure; that such law provides that no municipality subject to the provisions of XI-E of the Maryland Constitution annexing land 'may for a period of five years following its annexation, place such land in a zoning classification which permits a land use substantially different from the use for such land specified in the current and duly adopted Master Plan or plan of the County or agency having planning and zoning jurisdiction over such land prior to its annexation.' Exhibit L."

It is then alleged that the subject property was given zoning classifications resulting in "land use substantially different from that permitted in either the R-R or R-150 zoning classifications recommended" in the Master Plans, making the action of the City of Rockville "contrary to law and therefore invalid."

This violation of law is alleged to result in "immediate, substantial and irreparable injury to the Plaintiffs, in the performance of their governmental responsibilities."

It is then alleged that the suit is filed pursuant to the Uniform Declaratory Judgments Act for the construction of Chapter 116 of the Laws of 1971, as amended; and six prayers for relief are set forth:

1. That the rezoning of the subject property by Ordinance No. 2-72 and Resolution No. 6-72 by Rockville "are each null and void as contrary to law";

2. That Rockville may not exercise zoning jurisdiction contrary to Chapter 116 and contrary to Art. 23A, § 9 (c);

3. That a preliminary injunction be issued restraining Rockville and its employees from issuing building permits or permitting development of the subject property in the R-90 zone or pursuant to the Planned Residential Unit Development;

4. That a preliminary injunction be issued restraining HMC from obtaining permits or proceeding with work for any use other than as permitted by R-150 zoning under the County Regional District Zoning Ordinance;

5. That a permanent injunction be issued restraining HMC from obtaining permits or developing the subject property for land use in the R-90 zone and to prohibit any land use for five years on the subject property except as permitted in the R-150 zoning classification under the County Regional District Zoning Ordinance;

6. That the plaintiffs have other and further relief.

The demurrers of both Rockville and HMC are quite similar and state as principal grounds the following:

1. No cause of action in equity is stated.

2. The plaintiffs have an adequate remedy at law by way of administrative appeal provided in Chapter 1100, Subtitle B of the Maryland Rules and Art. 66B, § 4.04 of the Maryland Code.

3. None of the plaintiffs allege or have sufficient interest in the actions of Rockville under the challenge to bring the action for declaratory judgment under Art. 31A, § 2.

4. No declaratory judgment under Art. 31A, §§ 1-16, the Uniform Declaratory Judgments Act, may be obtained by the plaintiffs inasmuch as neither the Commission nor the District Council "has any governmental responsibility or authority as to land located within the corporate limits" of Rockville.

5. The plaintiffs are guilty of laches.

The chancellor on November 30, 1972, filed a written opinion and an order that the demurrers be sustained without leave to amend, being of the opinion that the plaintiffs had an adequate remedy at law by way of the administrative procedures in Rule B 1 a of the Maryland Rules and Art. 66B, § 4.08 of the Code, the case being a

zoning matter; that the plaintiffs had no standing to sue and that the plaintiffs, having "slept on their rights," are guilty of laches.

We will first discuss the question of the alleged adequacy of the legal remedy by way of an appeal under Art. 66B, § 4.08 and the Subtitle B Rules.

As we have indicated, the chancellor viewed the case as a "zoning case" and concluded that the established administrative procedures for the decision of zoning cases were applicable. He concluded that, inasmuch as the plaintiffs did not avail themselves of those procedures, they could not, after the statutory period of 30 days for notice of an administrative review of a zoning case had expired, proceed in equity for a declaratory judgment. The chancellor's error here was in concluding that the case was a "zoning case" rather than a case to vindicate and sustain the mandatory provisions of Art. 23A, § 9 (c). This law prohibits Rockville, as a municipality subject to Article XI-E of the Maryland Constitution, from annexing and placing land (for a period of five years following the annexation) in a zoning classification which permits a land use substantially different from that of the Master Plan of the County or agency having jurisdiction over the land prior to annexation. This presents an issue for judicial determination by declaratory judgment or other relief, rather than for administrative determination. The case presents issues in regard to the interpretation of Chapter 116 of the Laws of 1971 and the validity, *vel non*, of various ordinances and resolutions of Rockville as being in conflict with the mandatory provisions of Chapter 116. These are classic issues for resolution by declaratory judgment when an actual controversy exists, as in the present case. Article 31A, § 6 provides in relevant part:

'Relief by declaratory judgment or decree may be granted in all civil cases in which an actual controversy exists between contending parties, or in which the court is satisfied that antagonistic claims are present between the parties involved which indicate imminent and inevitable litigation, or when in any such case the court is satisfied that

a party asserts a legal relation, status, right, or privilege in which he has a concrete interest and that there is a challenge or denial of such asserted relation, status, right, or privilege by an adversary party who also has or asserts a concrete interest therein, and the court is satisfied also that a declaratory judgment or decree shall serve to terminate the uncertainty or controversy giving rise to the proceedings."

Neither the Commission nor the County would have any remedy under Art. 66B, § 4.08 or Rule B 1 a. It is clear that Rule B 1 a is applicable *only* when an appeal is provided by statute. Article 23A, § 9 (c), as amended, *does not provide* for a statutory appeal for a review by the courts of a violation of that section. Hence, Chapter 1100, Subtitle B of the Maryland Rules does not apply to Art. 23A, § 9 (c) — *see Urbana Civic Association v. Urbana Mobile Village, Inc.,* 260 Md. 458, 272 A. 2d 628 (1971) — and the Commission and the County were required to seek relief in equity as they did in the instant case. *See England v. Mayor & Council of Rockville,* 230 Md. 43, 185 A. 2d 378 (1962); *Congressional School of Aeronautics v. State Roads Commission,* 218 Md. 236, 146 A. 2d 558 (1958). We did state in *Prince George's County v. Laurel,* 262 Md. 171, 183-84, 277 A. 2d 262, 268-69 (1971) that when considering the rezoning of newly annexed land, Articles 66B and 23A should be *read* together. This did not mean, however, that these two Articles are *merged* and that provisions for administrative determinations of zoning cases in Art. 66B become available for determinations under Art. 23A. We observed in *Urbana* that, although Art. 66B provides for an administrative appeal in its zoning provisions, there is no provision in Art. 66B for an appeal in its planning and subdivision sections. We concluded in *Urbana* that, inasmuch as there was no provision for an appeal authorized by statute, the plaintiffs in that case could seek appropriate relief in equity in an original suit in order to resolve the status of the subdivision plat approval involved in that case.

Nor would either the Commission or the County be an "aggrieved party" for the purposes of administrative review.

In *Bryniarski v. Montgomery County Board of Appeals*, 247 Md. 137, 144, 230 A. 2d 289, 294 (1967), we defined a "person aggrieved" as:

> " . . . One whose personal or property rights are adversely affected by a decision of the board. The decision must not only affect a matter in which the protestant has a specific interest or property right but his interest therein must be such that he is personally and specially affected in a way different from that suffered by the public generally."

*See also White v. Major Realty, Inc.*, 251 Md. 63, 64, 246 A. 2d 249, 251 (1968), citing *Bryniarski* with approval and following it.

Neither the Commission nor the County owns any property located within sight or sound of the subject property and have no special interest or damage to give either of them the status of an "aggrieved party," necessary to present an appeal from any action by Rockville, even if otherwise available.

We are of the opinion that the Commission and the County have standing to sue in the present case in order to insulate the Master Plan from impairment by the action of Rockville, contrary to the provisions of Art. 23A, § 9 (c), as amended, as we stated in *Maryland-National Capital Park & Planning Commission v. McCaw*, 246 Md. 662, 670, 229 A. 2d 584, 588 (1967):

> "Under explicit statutory provisions, the Commission is a representative of the public in matters such as are here involved. It is empowered to make general plans for the physical development of the District and in doing so, is expressly made a representative of the State."

We deem our decision in *Prince George's County v. Laurel, supra*, to be controlling on this issue. In *Laurel*, the parties were Prince George's County (including its County Council), the Commission and the City of Laurel. It too was a suit in equity for declaratory relief under the Uniform Declaratory

Judgments Act filed by Laurel to determine the respective rights and jurisdictions of each of the governing agencies. Although Chapter 116 of the Laws of 1971 was adopted *subsequent* to our decision in *Laurel,* the test for standing to sue is the same. In the *Laurel* case, we held that the Commission had sufficient interest and standing to sue. This holding applies, *a fortiori,* to the County.

Finally, in regard to "laches," it is clear that there was no substantial delay in filing the suit in the present case, which, indeed, was filed quite promptly, *i.e.,* on April 4, 1972, the annexation having become final on March 10, 1972, when the annexation action of January 25, 1972, was no longer subject to referendum. Nor did the bill of complaint show any prejudice to the defendants by any "delay," so that there were no laches, in the usual equity sense, appearing on the face of the bill of complaint. *See Niner v. Hanson,* 217 Md. 298, 309, 142 A. 2d 798, 803 (1958); *Boehm v. Boehm,* 182 Md. 254, 269-70, 34 A. 2d 447, 454 (1943); *Kaliopulus v. Lumm,* 155 Md. 30, 141 A. 440 (1928).

If the chancellor meant by "laches" the failure of the Commission and the County to avail themselves of administrative review within 30 days under Art. 66B, § 4.08 and Chapter 1100, Subtitle B of the Maryland Rules, we have already disposed of this issue, *supra.*

> *Order of November 30, 1972, sustaining the demurrers to the bill of complaint without leave to amend, reversed and the case is remanded to the Circuit Court for Montgomery County for further proceedings in regular course, one-half the costs to be paid by the Mayor and Council of Rockville, Maryland, one of the appellees, the remaining one-half of the costs to be paid by HMC Enterprises, Inc., another appellee.*