MARYLAND-NATIONAL CAPITAL PARK AND PLANNING COMMISSION ET AL. *v.* MAYOR AND COUNCIL OF ROCKVILLE ET AL.

[No. 13, September Term, 1974.]

*Decided October 8, 1974.*

*Joint Motion for clarification or rehearing filed October 24, 1974; denied October 24, 1974.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Stephen J. Orens, Assistant County Attorney,* with whom were *Richard S. McKernon, County Attorney, Alfred H. Carter, Deputy County Attorney, John B. Walsh, Jr.,* and *Stephen P. Johnson, Assistant County Attorneys,* on the brief, for Montgomery County, Md. *Sanford E. Wool,* with whom was *Robert H. Levan* on the brief, for Maryland-National Capital Park and Planning Commission. *Ralph R. Roach* for Ronald C. Johnson et al.

*Roger W. Titus, City Attorney,* for Mayor and Council of Rockville. *David E. Betts* for HMC Enterprises, Inc.

LEVINE, J., delivered the opinion of the Court.

This is the sequel to *Md.-Nat'l Cap. P. & P. v. Rockville,* 269 Md. 240, 305 A. 2d 122 (1973), in which we reversed a circuit court decision sustaining demurrers to appellants' bill of complaint for declaratory and injunctive relief. Since a detailed account of the circumstances giving rise to this dispute may be found there, we shall mention only those which are essential to our decision.

We are confronted here with questions regarding the construction and constitutionality of Chapter 116 of the Laws of 1971. That enactment, which added a proviso to Maryland Code (1957, 1973 Repl. Vol.) Art. 23A, § 9 (c), states that no municipality annexing land may, for five years following annexation, rezone the land so as to permit "a land use *substantially different* from the use for the land specified in the current and duly adopted master plan or plans of the county or agency having planning and zoning

jurisdiction over the land prior to its annexation." (emphasis added). Chapter 116, enacted as an emergency measure, became effective on April 23, 1971.

On January 25, 1972, the Mayor and Council of Rockville, Maryland (Rockville), a municipal corporation organized pursuant to Article XI-E of the Maryland Constitution and Article 23A of the Annotated Code of Maryland, annexed 174.8176 acres of land owned by appellee, HMC Enterprises, Inc. (HMC). Prior to such annexation, the subject property was located within the Maryland-Washington Regional District, and was therefore under the zoning and planning jurisdiction, respectively, of appellees, Montgomery County, Maryland (the County) and the Maryland-National Capital Park and Planning Commission (the Commission).

Immediately following the annexation, Rockville adopted Ordinance No. 2-72, which placed the newly annexed land in the city's R-90 zoning classification. In that zoning category, the property qualified for a procedure under Rockville's zoning ordinance known as Planned Residential Unit Development (PRU), which is in the nature of a special exception. Pursuant to a contract dated January 21, 1972, Rockville agreed to permit development of the subject property by HMC in accordance with the Planned Residential Unit Development provision.

On January 25, 1972, Rockville adopted Resolutions No. 4-72 and No. 6-72. Resolution No. 4-72 authorized the Mayor to execute the previously mentioned contract. Resolution No. 6-72 approved the Planned Residential Unit Development for the annexed property in accordance with "Plan A." That plan proposed the construction of 583 dwelling units in a subdivision consisting of 140 sale townhouse units, 64 rental townhouse units, 130 rental garden apartment units, and 249 single family units.

There was in effect on January 25, 1972, a "Master Plan for The Vicinity of Rockville, Part 1," duly adopted by the Commission on April 26, 1961, and a "Master Plan for Potomac-Travilah and Vicinity," duly approved by the County and duly adopted by the Commission on January 25,

1967. Under those plans, the annexed property was variously recommended for the R-R zone (rural residential), the R-150 zone (detached restricted residential), and the R-E zone (residential estate). Neither townhouses nor garden apartments were allowed, as permitted uses or special-exception uses, under any of those three county classifications. They were, however, permitted uses under Rockville's Planned Residential Unit Development.

In our prior decision, we held that appellants could maintain this action, and need not be relegated to the statutory appeal prescribed for "zoning cases"; we also held that the suit was not barred by laches. Upon remand, which was followed by cross-motions for summary judgment, the chancellor granted appellees' motion, ruling that Rockville, ". . . by its annexation and rezoning, has not permitted a land use *substantially different* from the use specified in the Master Plan[s] adopted by the Maryland-National Capital Park and Planning Commission . . . ." (emphasis added). He thus found it unnecessary to reach additional issues which appellees had raised under the Federal and Maryland Constitutions. To avoid the possibility of further appeals, we shall decide them here.

We are thus presented with these questions:

I Whether Rockville placed HMC's land ". . . in a zoning classification which permits a land use substantially different from the use for the land specified . . ." in the two Master Plans?

II Whether Chapter 116 violates Article XI-A, § 3 of the Maryland Constitution?

III Whether Chapter 116 violates the Due Process Clause of the Fourteenth Amendment to the Federal Constitution and Article 23 of the Maryland Declaration of Rights?

I

The chancellor rested his decision ". . . that [Rockville], by its annexation and rezoning, has not permitted a land use substantially different from the use specified in the Master Plan[s]," on three grounds: (1) That the three county zoning

categories, R-R, R-E and R-150, and the R-90 in Rockville included an array of "permitted uses," a comparison of which demonstrates that the four classifications are similar to each other; [1] (2) that substantial change is to be measured in the broadest possible terms, *e.g.*, whether Rockville rezoned the subject property ". . . to commercial or industrial use, or to any multi-family residential zone. . . ."; (3) that on March 13, 1973, the County established a new "P-D" (Planned Development) zone in the nature of a special exception, which the chancellor characterized as "strikingly similar" to Rockville's PRU procedure. In strenuously urging affirmance, appellees quite understandably argue that these grounds for the chancellor's ruling were correct.

The thrust of appellees' argument on this issue focuses on the intent of the Legislature. What seems to have troubled them is that Chapter 116 requires a comparison between a land use recommended by a Master Plan and a land use permitted by a given zoning classification. The solution to this dilemma — in the view taken below and advocated here by appellees — is the inclusion not only of permitted uses, but all special exception uses contained in each of the four zones which are being compared. By applying this broader standard of comparison, appellees thus find it possible to argue that Rockville's R-90 zone is more restrictive than the three county zones; hence, there has been no violation of Chapter 116.

The cardinal rule of statutory construction is to ascertain and carry out the real legislative intent, *Radio Com., Inc. v. Public Serv. Comm'n,* 271 Md. 82, 93, 314 A. 2d 118 (1974); *Scoville Serv., Inc. v. Comptroller,* 269 Md. 390, 393, 306 A. 2d 534 (1973); *Silberman v. Jacobs,* 259 Md. 1, 267 A. 2d 209 (1970); *Atlantic, Gulf v. Dep't of Assess. & T.,* 252 Md. 173,

---

1. The R-R and R-E zones in the county contain a wide range of "permitted uses" including one-family detached dwellings, places of worship, farms, fire stations, institutions of a non-commercial nature, pipelines, government buildings and recreational areas, private pools and temporary helistops. With minor variations, not here relevant, the same uses are also permitted in the R-150 zone.

The R-90 zone in Rockville includes some, but not all, of those contained in the three county zones.

249 A. 2d 180 (1969); and in ascertaining that intent, the Court considers the language of an enactment in its natural and ordinary signification, *City of Gaithersburg v. Mont. Co.*, 271 Md. 505, 511, 318 A. 2d 509 (1974); *Grosvenor v. Supervisor of Assess.*, 271 Md. 232, 315 A. 2d 758 (1974); *Radio Com., Inc. v. Public Serv. Comm'n, supra.* If there is no ambiguity or obscurity in the language of a statute, there is usually no need to look elsewhere to ascertain the intent of the legislature, *Scoville Serv., Inc. v. Comptroller, supra; Atlantic, Gulf v. Dep't of Assess. & T., supra.*

The language of the statute is clear in foreclosing a ". . . zoning classification which permits a land use substantially different from the *use* for the land *specified in the current and duly adopted Master Plan . . . .*" (emphasis added). Reference is made to neither the existing county zoning classifications nor any special exception thereto. The only uses "specified" for the subject property in the current and duly adopted Master Plans are R-R (rural residential), R-E (residential estate), and R-150 (density control development, one family, detached, restricted residential, average lot size). Thus, any special exceptions permitted by the County zoning ordinance in any of those three zones cannot be the basis for a comparison. On the other hand, if, in rezoning the property simultaneously upon annexation, the municipality also grants a special exception, as Rockville has done here, then surely it has ". . . place[d] that land in a zoning classification which *permits* [the] land . . ." to be developed under that special exception. Therefore, the special-exception uses provided in the three county zones should have been ignored; but the PRU, although embodied in Rockville's R-90 zone as in the nature of a special exception, had actually been approved and, therefore, should have been considered. Hence, contrary to the clear legislative intent expressed in the statute, Rockville has "place[d] that land in a zoning classification [R-90] which permits [as] a land use" the PRU.

We pass, then, to the question whether the use permitted by Rockville's zoning classification is "substantially different" from the uses specified by any of the three county zones. We think it is. All three provide basically for

single-family dwellings, differing principally in lot sizes and density. Were it not for the PRU, the same might well be said of Rockville's R-90 zone. The townhouses and garden apartments that would be developed under the PRU, however, are "substantially different" from single-family dwellings. In sum, even if all the "permitted uses" in each of the three county zones and Rockville's R-90 classification enter into the "substantially different" equation, as urged by appellees, the added factor of the PRU establishes a substantial difference between the R-90, on the one hand, and the R-R, R-E, and R-150, on the other.

A word is in order regarding the P-D zone which, having been established by the County on March 13, 1973, was not in existence when the annexation occurred. As we noted earlier, Chapter 116 speaks of "a land use substantially different from the use for the land specified in the current and duly adopted master plan or plans of the county or agency having planning and zoning jurisdiction over the land prior to its annexation." The question is whether the words "prior to its annexation" modify only the phrase "county or agency" or whether they also refer to "duly adopted Master Plan." Following annexation, neither the County nor the Commission had planning and zoning power over the annexed property, *Prince George's Co. v. Laurel,* 262 Md. 171, 277 A. 2d 262 (1971). Thus, even if, for the sake of argument, we treat the adoption of the P-D zone as a modification of the Master Plans, the latter no longer applied to the land in controversy. In short, the city's new zoning must be compared with the Master Plans in effect prior to the annexation.

II

Article XI-A, § 3 of the Maryland Constitution limits the power of the County to enact laws for a local municipality. In relevant part, this section provides:

". . . [N]othing herein contained shall be construed to authorize or empower the County Council of any County in this State to enact laws or regulations for any incorporated town, village, or municipality in

said County, *on any matter covered by the powers granted* to said town, village, or municipality by the Act incorporating it, or any subsequent Act or Acts amendatory thereto." (emphasis added).

It is maintained by appellees that this proviso has been violated by the County. They claim that Chapter 116 grants to the County the power to preempt Rockville's zoning authority contained in Art. 66B. Were this true, it might well be violative of the Maryland Constitution. What appellees overlook is that Article XI-A, § 3 merely precludes counties from exercising the legislative power actually granted to municipalities. Chapter 116 circumscribes the municipality's power to rezone annexed land for a period of five years. In effect, it withholds that power except when exercised in conformity with a duly adopted Master Plan. To the extent that the municipality's power to rezone is withheld in this manner by Chapter 116, surely the County has not violated Article XI-A, § 3 by enacting any laws for any incorporated municipality ". . . on any matter covered by the powers granted to said . . . municipality . . . ."

Article XI-E, § 6 of the Maryland Constitution, dealing primarily with limitations upon home rule charters, expressly provides that "[a]ll charter provisions, or amendments thereto, adopted under the provisions of [Article XI-E], shall be subject to all applicable laws enacted by the General Assembly . . . ." It seems clear that Rockville, being a municipal corporation established under Article XI-E, is subject to the provisions of Chapter 116, an enactment of the General Assembly.

### III(a)

The contention that Chapter 116 violates the Due Process Clause of the Fourteenth Amendment and Article 23 of the Maryland Declaration of Rights is bifurcated. First, appellees maintain "that the proscription contained in Section 9 (c) [of Art. 23A] is void for vagueness on its face or, alternatively, as applied." It bottoms this argument on the principle that a " 'statute which either commands or forbids the doing of an act in terms so vague that persons of

ordinary intelligence must necessarily guess at its meaning and differ as to its application violates the constitutional guarantees of due process of law.' *State v. Magaha,* 182 Md. 122, 32 A. 2d 477, 478 (1943)."

The short answer to appellees' contention is that, except in rare instances, this principle is applicable only in criminal cases. Note, *The Void-for-Vagueness Doctrine in the Supreme Court,* 109 U. Pa. L. Rev. 67, 69-70 n. 16 (1960). Significantly, both decisions cited by appellees to support their argument are criminal cases: *Coates v. City of Cincinnati,* 402 U. S. 611, 91 S. Ct. 1686, 29 L.Ed.2d 214 (1971) and *State v. Magaha, supra.* As the Supreme Court said in *United States v. Harriss,* 347 U. S. 612, 74 S. Ct. 808, 98 L. Ed. 989 (1954):

"The constitutional requirement of definiteness is violated by a *criminal* statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute. The underlying principle is that no man shall be held *criminally* responsible for conduct which he could not reasonably understand to be proscribed." 347 U. S. at 617 (emphasis added).

In one of the rare cases, if not the only one, in which a vagueness attack on a non-criminal statute has succeeded in the Supreme Court, the latter emphasized that what had been imposed there was ". . . the exaction of obedience to a rule or standard which was so vague and indefinite as really to be no rule or standard at all." *Small Co. v. Am. Sugar Ref. Co.,* 267 U. S. 233, 239, 45 S. Ct. 295, 69 L. Ed. 589 (1925).

Appellees contend that the words "land use" and "use for the land," as they appear in the statute, require the comparison of a "use with a use." Yet, they say, since each of the zoning classifications applicable to this case contains numerous permitted uses, many of which are themselves substantially different from each other, it is impossible to make the comparison required by the statute. We do not see it quite that way. As we have indicated, neither of the two Master Plans in question mentions the numerous "permitted

uses" listed in each classification under the relevant provisions of the zoning ordinance. On the contrary, they merely identify the zones by the categories under which they are popularly recognized. For example, as we have already noted, R-E, which covers part of the subject property, is denoted on the Master Plan as "residential estate." Similarly, R-R is described as "rural residential," and R-150 as "restricted residential, medium density." Suffice it to say that Chapter 116 does not impose or exact obedience to a rule or standard which is so vague and indefinite as really to be no rule or standard at all, *Small Co. v. Am. Sugar Ref. Co., supra.*

### III(b)

The final constitutional argument advanced by appellees is that Chapter 116 constitutes a denial of Due Process because it places land annexed by a municipality in a "straight jacket" for five years. They hypothesize that a substantial change in the character of a neighborhood might occur, which would otherwise support a rezoning, but no jurisdiction would be empowered to effect such a change. Furthermore, they argue, the straight jacket is tightened because the zoning is frozen to a use recommended by a Master Plan which, under *Chapman v. Montgomery County,* 259 Md. 641, 271 A. 2d 156 (1971), does not even enjoy the stature of an original or comprehensive zoning.

Zoning has been upheld as a valid exercise of the police power when it is rationally related to the health and safety of the community. *Euclid v. Ambler Co.,* 272 U. S. 365, 47 S. Ct. 114, 71 L. Ed. 303, 54 A.L.R. 1016 (1926). The *Euclid* Court held that a statute was constitutional unless it was found that the provisions are clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare. This rule was reaffirmed in *Village of Belle Terre v. Boraas,* 416 U. S. 1, 94 S. Ct. 1536, 39 L.Ed.2d 797 (1974), which upheld a zoning ordinance limiting occupancy of one family dwellings to traditional families or to groups of not more than two unrelated persons. In the face of constitutional attack, the

Court upheld the ordinance on the grounds that it was reasonable, not arbitrary, and bore a relationship to a permissible state objective.

A major objective of Chapter 116 is to preserve the integrity of the Master Plan adopted by the jurisdiction or commission having planning power immediately prior to annexation. In enacting Chapter 116, the General Assembly validly could have considered that the planning and zoning functions frequently involve large areas, and not merely the land being annexed; and, therefore, that a substantial change in the zoning of an annexed tract might well be disruptive to the planning for the surrounding areas. Thus, the statute is rationally related to a legitimate state objective, and is not arbitrary or unreasonable, *Village of Belle Terre v. Boraas; Euclid v. Ambler Co., both supra.*

Appellees cite a number of Pennsylvania cases invalidating exclusionary zoning statutes: *National Land and Investment Co. v. Kohn,* 419 Pa. 504, 215 A. 2d 597 (1965) (4 acre lot zoning unconstitutional as being exclusionary); *Appeal of Girsh,* 437 Pa. 237, 263 A. 2d 395 (1970) (Failure of town of 4.64 square miles and 13,000 inhabitants to provide for apartments in their zoning held unconstitutional as exclusionary); *Appeal of Kit-Mar Builders, Inc.,* 439 Pa. 466, 268 A. 2d 765 (1970) (2 and 3 acre lot size zoning unconstitutional); *Cheney v. Village 2 at New Hope, Inc.,* 429 Pa. 626, 241 A. 2d 81 (1968) (planned residential unit type of zoning approved). These cases are all inapposite to the issue before us, since they deal with zoning ordinances and their exclusionary effects. Chapter 116, on the other hand, is manifestly not a zoning ordinance, but a statutory limitation on the powers of a municipality annexing land. *Md.-Nat'l Cap. P. & P. v. Rockville,* 269 Md. 240, 246, 305 A. 2d 122 (1973). Chapter 116 violates neither the Due Process Clause of the Fourteenth Amendment nor Article 23 of the Maryland Declaration of Rights.

Since the action taken by Rockville did not comply with Chapter 116, which was validly enacted, the chancellor erred in granting appellees' motion for summary judgment. Upon remand, a decree should be entered granting summary

562

judgment in favor of appellants and providing for appropriate declaratory and injunctive relief.

> *Reversed and remanded for passage of a decree conformable to the views expressed herein; appellees to pay costs.*