# CITY OF BOWIE *v.* WASHINGTON SUBURBAN SANITARY COMMISSION

[No. 217, September Term, 1967.]

612

*Decided May 2, 1968.*

The cause was argued before HAMMOND, C. J., and HOR-NEY, McWILLIAMS, FINAN and SINGLEY, JJ.

*R. Ronald Sinclair* for appellant.

*John B. Kenkel,* with whom was *J. Lloyd Niles* on the brief, for appellee.

HAMMOND, C. J., delivered the opinion of the Court.

A David, City of Bowie, asserted supremacy of right to build a sewerage system for a portion of the city over a Goliath, the

Washington Suburban Sanitary Commission, which had announced its determination to construct the system. In the judicial struggle which resulted it was not Goliath but David who was felled. Judge Mathias concluded that the legislative intent revealed by the various pertinent statutes, read as a whole, was to make the Commission paramount in the field and that its decision to build the sewerage system rather than to permit Bowie to build it was within its power to make.

Chapter 122 of the Laws of 1918 established the Washington Suburban Sanitary District within Prince George's and Montgomery Counties. The Commission provided for the government of the District was authorized to purchase or condemn existing municipal water and sewerage systems. Section 16 of Ch. 122, as amended by Ch. 521 of the Laws of 1953, permitted a municipality to build its own water or sewerage system at its own expense provided the Commission determined that it was inexpedient or impracticable for it to build it, and provided that the facility:

> "shall be constructed under plans and specifications submitted to and approved by said Commission and its construction, maintenance and operation shall be under the supervision and general control of said Commission * * *."

The town of Bowie and certain surrounding areas were made part of the Sanitary District by Ch. 793 of the Laws of 1947. Bowie originally consisted of what is now called the Huntington Section, in which the Commission has provided water, but not sewerage, facilities which are now badly needed. A nearby estate known as Belair was developed into homes by Levitt and Sons, Incorporated, which in the process built water and sewerage systems. Bowie thereafter annexed Belair and a corridor connecting it with the Huntington Section and now, as lessee, operates the Belair water and sewerage systems.

In 1962 Bowie began to investigate the cost and feasibility of building a sewerage system for Huntington and asked the Commission whether it contemplated building such a system. After considerable negotiation, the Commission told Bowie it

would answer a formal request to build the system if such a request were made and if it decided that it would be inexpedient or impracticable to proceed, it would authorize Bowie to proceed pursuant to plans approved by the Commission. Bowie was advised, in the interest of saving time, to procure engineering advice and have plans prepared and the Commission agreed that if the ultimate decision was that the Commission was to build the system, Bowie would be reimbursed for the expenses it had incurred for engineering studies and construction plans.

Bowie received completed engineering and cost studies by April 1965, and in May 1966 was given approval for an advance of federal funds. In June 1966 the City contracted for preliminary and final plans, using the federal funds.

Meanwhile, the Commission undertook an economic and engineering feasibility survey and on August 2, 1966, advised Bowie that it had decided to provide the desired sewerage system for Huntington and surrounding areas which were also in the District but not in Bowie.

Bowie thereupon went to court to establish that its authority to build the sewerage system was independent of and paramount to that of the Commission, seeking a declaration, an injunction and a mandamus to compel the Commission to issue a permit. After the Commission had pleaded (in which it conceded its liability to reimburse Bowie for the expenses it had incurred), the parties agreed that the controlling issue was solely one of law—whether Bowie or the Commission was paramount. Judge Mathias, in an opinion well analyzing the laws, held that the Commission has the final say. We think he was right.

Bowie makes two contentions. It says that Sec. 6 of Art. XI-E of the Constitution of Maryland, read with Art. 23A of the Code, put it beyond the control of the Commission, and if it is wrong on this that the provisions of the Sanitary Facilities Bond Act of 1957 (§§ 428 to 444 of Art. 43 of the Code) establish beyond question that a municipality which avails itself of the provisions of that act can walk alone, ignoring the Commission.

Article XI-E, entitled "Municipal Corporations," requires the legislature to deal with the chartering, organization, govern-

ment and affairs of municipal corporations on a general and not an individual basis. Section 6 provides in part:

> "Any local law, or amendments thereto, relating to the incorporation, organization, government, or affairs of any municipal corporation and in effect at the time this Article becomes effective, shall be subject to any applicable State law enacted after this Article becomes effective."

Article 23A, says Bowie, was a "State law" passed subsequent to (and in furtherance of) Art. XI-E and therefore it supersedes Ch. 122 of the Laws of 1918 creating the Commission, because that enactment was and is a local law. Reliance is put on § 9 of Art. 23A, which reads in part:

> "No local law conferring special powers or duties on any such board, commission, authority or public corporation shall be construed to divest any municipal corporation exercising the same powers or performing the same duties within its corporate limits, in accordance with law, of its right to continue the exercise of such powers or the performance of such duties, it being the intent hereof to avoid duplication in the rendition of public service."

We see three controlling answers to this argument. Article XI-E was approved by the voters in 1954 and implemented by Ch. 423 of the Laws of 1955, now Art. 23A. Section 9 (c) of Art. 23A reads:

> "No municipal corporation which is subject to the provisions of said Article 11E shall so amend its charter or exercise its powers of annexation, incorporation or repeal of charter as to affect or impair in any respect the powers relating to sanitation, including sewer, water and similar facilities, and zoning, of the Washington Suburban Sanitary Commission or of the Maryland-National Capital Park and Planning Commission."

*See also,* Art. 23A, § 2.

If it be still assumed that Ch. 122 of the Laws of 1918 is a local law Bowie is not helped. Section 16 thereof was repealed and reenacted with amendments by Ch. 521 of the Laws of 1953, and Sec. 6 of Art. XI-E, first effective in 1954, specifically provides that "all laws enacted by the General Assembly and in effect at the time this article becomes effective shall remain in effect until amended or repealed in accordance with the provisions of this Constitution."

Finally, we think Ch. 122 of the Laws of 1918 is not to be regarded as a local law, covering as it does large areas of two counties adjoining a metropolis. Article XI-A of the Constitution, which deals with the chartering of Counties, offers a persuasive clue. Section 4 thereof prohibits the General Assembly from enacting a public local law for a county on any subject covered by the express powers granted to chartered counties, and further provides: "Any law so drawn as to apply to two or more of the geographical subdivisions of this State shall not be deemed a Local Law, within the meaning of this Act." The analogy to Art. XI-E is clear, as the discussion in *Baltimore Transit Co. v. Metropolitan Transit Authority,* 232 Md. 509, makes plain. *Compare Cole v. Secretary of State,* 249 Md. 425.

Bowie relies on the language of § 442 of Art. 43 of the Code, which reads:

> "The powers conferred by this subtitle shall be in addition and supplemental to the powers conferred by any other general, special or local law, and shall in no manner be restricted by debt or tax rate limitations in any local or general law or in any municipal charter. Sewerage facilities may be planned, acquired, purchased, constructed, reconstructed, improved, bettered, and extended, and bonds may be issued under this subtitle for said purposes, notwithstanding that any general, special or local laws may provide for the planning, acquisition, purchase, construction, reconstruction, improvement, betterment, and extension of like facilities, or the issuance of bonds for like purposes, and without regard to the requirements, restrictions, limitations or other provisions contained in any other general, special

"or local law, including, but not limited to, any requirement for the approval by the voters of any municipality. Bonds also may be issued hereunder, notwithstanding an unfavorable vote by the voters of a municipality, where sanitary facilities have been ordered by the department of health or a court of competent jurisdiction. In so far as the provisions of this subtitle are inconsistent with the provisions of any general, special, or local law, the provisions of this subtitle shall be controlling."

Sections 409 to 427 of Art. 43, which largely were enacted in 1927, conferred on municipalities the general powers as to water and sewerage systems additionally conferred on them in 1957 by §§ 428 to 444. Sections 409 to 427 had proved inadequate because of charter or other statutory limitations as to debt or tax rates, the right to use outside funds and the need for a referendum on bonds to be issued. Various municipalities could not as a practical or legal matter comply with orders of the Health Department or the pressure of citizens to overcome conditions dangerous to health by furnishing adequate sewerage systems. The Sanitary Facilities Bond Act of 1957 was clearly intended to remove these blocks and to insure the building of a sewerage system when one was needed, and part of this insurance was the overcoming of laws which prevented or hindered the sanitation progress aimed at. In 1927 when §§ 409 to 427, which had the same (although, as it turned out, inadequately supported) purpose as the 1957 Act, were enacted, the legislature spelled out in § 426:

"All acts and parts of acts inconsistent with the provisions of §§ 409-427 are hereby repealed to the extent of their inconsistency, provided that nothing herein contained shall be taken as repealing any part of §§ 387-406 of this article, or chapter 122 of the Acts of the Maryland Legislature of 1918, nor as restricting any control which the State Board of Health of Maryland is empowered to exercise,"

and in § 427:

"Nothing in §§ 409-427 shall be taken as affecting any power or duty accorded to or imposed upon the Washington Suburban Sanitary Commission, the Anne Arundel County Sanitary Commission, the Baltimore County metropolitan district or Baltimore City, which agencies are hereby specifically excepted from the provisions of said sections."

We think it would be so unlikely that the legislature intended in 1957 to authorize a municipality within the Washington Suburban Sanitary District to build a sewerage system when the Commission was prepared to build as good or a better system, that it would be unreasonable to read the words of § 442 in isolation (as they can be) as meaning that the Commission was stripped of its long-granted powers. Rather, we read the broad paramountcy given the provisions of the Sanitary Facilities Bond Act of 1957 as overruling laws which prevented or hindered municipalities in providing sanitary facilities for their citizens, not laws which offer those facilities.

It is a cardinal rule of statutory construction that repeals not express will not be found unless demanded by irreconcilability or repugnancy. The provisions of law which govern the Commission and those of the 1957 Act can be read together so as to effectuate the evident legislative intent to insure, as nearly as possible, that every municipality which needs adequate and healthful water and sewerage systems shall have them. In an area where the Commission operates, water and sewerage needs can be gratified by the Commission if it deems it expedient and practicable to do so and by the municipality, with the help of the 1957 Act if necessary, if the Commission finds it inexpedient or impracticable to do so.

Support for this reading of the statutes is found in Sec. 2 of Ch. 76 of the Laws of 1957. In amending § 31 of Art 23A, which deals with municipal debt, Sec. 2 provided:

"* * * every such municipal corporation shall also have the authority to exercise all powers conferred upon municipal corporations by Sections 47, 365 to 405, inclusive, and 406 to 427, inclusive, of Art. 43 of this Code, "Title Health," *in accord with the provi-*

*sions in said enumerated sections \* \* \*."* (Emphasis supplied.)

The provisions of Secs. 426 and 427 preserve the supremacy of the Commission.

Judge Mathias' declaration that the Commission had statutory paramountcy in the area involved will be affirmed, it being understood, as counsel for the Commission assured us at the argument, that Bowie will be reimbursed by the Commission for preparatory expenses it has incurred, such as those for engineering, consulting and design and planning services.

*Order affirmed, with costs.*