PRINCE GEORGE'S COUNTY, MARYLAND *v.*
MARYLAND-NATIONAL CAPITAL PARK
AND PLANNING COMMISSION

[No. 269, September Term, 1972.]

*Decided June 5, 1973.*

204

The cause was argued before MURPHY, C. J., and BARNES, SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*James F. Sharkey, Associate County Attorney,* with whom was *Walter H. Maloney, Jr., County Attorney,* on the brief, for appellant.

*Sanford E. Wool, Deputy General Counsel,* and *Harry W. Lerch,* with whom was *Robert H. Levan, General Counsel,* on the brief, for appellee.

Barnes, J., delivered the opinion of the Court.

In this appeal from a declaratory decree of October 2, 1972, of the Circuit Court for Prince George's County, in Equity, (Bowen, J.) — filed October 3, 1972 — three determinative questions are presented to us for decision, *i.e.*, did the chancellor err (I) in holding that the Maryland-National Capital Park and Planning Commission, appellee (the Commission), had standing to sue; (II) in holding that there was a justiciable issue ripe for a declaratory decree; and, (III) in holding that Chapter 780 of the Laws of Maryland of 1959, as amended (the Regional District Act), was a public general law rather than a public local law, and thus not subject to amendment nor to be superseded in part by the Prince George's County Charter.

The Commission filed its suit against the appellant, Prince George's County, in the Circuit Court for Prince George's County on May 5, 1971, seeking declaratory and injunctive relief. The chancellor on June 7, 1971, after a hearing, issued a preliminary injunction enjoining the County from interfering with the activities of the Commission, protecting the Commission's budget and tax revenues and maintaining the *status quo* of the parties, pending the final determination of the issues and controversies involved in the litigation. Trial was held by the chancellor on March 27, 1972. The chancellor, after finding that the Commission had standing and that justiciable issues were presented ripe for controversy, passed a final decree, dated October 2, 1972, in which he held the Regional District Act to be a public general law and made a number of declarations. The full text of the final decree is set out in an Appendix filed with this opinion. From this final decree, the County perfected a timely appeal to this Court.

The General Assembly originally created the Commission by Chapter 448 of the Laws of 1927 (Chapter 448). By this extensive statute, the Commission administered certain park development, planning and zoning functions within those portions of Prince George's and Montgomery Counties adjoining the District of Columbia. Designated as the Maryland-Washington *Metropolitan* District (Metropolitan

District), this original area was roughly located between the District of Columbia and what is now the Capital Beltway. The Commission was given the power to sue and be sued, issue bonds, implement land use and subdivision regulations and generally effectuate the purpose of Chapter 448 which was the "co-ordinated, comprehensive, adjusted, systematic and harmonious development of the [Metropolitan] District." Exclusive power over planning and zoning was vested in the Commission and the Boards of County Commissioners of the two counties.

Chapter 714 of the Laws of 1939 created the Maryland-Washington *Regional* District (Regional District) under the jurisdiction of the Commission. The Regional District included basically the Metropolitan District with some additions. Under this Chapter, the Commission's "park and planning functions in the district were separated, and the Maryland-Washington Regional District . . . was created as the planning and zoning district." *Prince George's Co. v. Laurel*, 262 Md. 171, 174, 277 A. 2d 262, 264 (1971).

In 1943, the General Assembly by Chapter 992 repealed Chapter 714 and re-enacted it "with amendments as a bi-county act applicable to the Maryland-Washington Regional District in Montgomery and Prince George's Counties and not as a public local law of either county . . . ." Likewise, in 1943, the General Assembly indicated its intent to clarify the status of the law pertaining to the Metropolitan District by enacting Chapter 1008 "as a single bi-county Act . . . and not as a public local law or laws of either county."

In 1959, the General Assembly consolidated all of the provisions relating to the Commission by enacting Chapter 780 of the Laws of Maryland. It repealed certain sections of the Codes of Montgomery and Prince George's Counties pertaining to the Commission, repealed all earlier Chapters (discussed above) and enacted in lieu thereof a new subtitle "Park and Planning Commission." The law basically continued the Commission, expanded the areas under its jurisdiction and redesignated its functions under the subheadings "Metropolitan District" and "Regional

District." It is the Regional District Act which is in controversy here.

Under Chapter 780, the Commission was to consist of ten members — five from each county. Section 11 provides:

"The Commission has the right to exercise all powers and functions granted to it in this Article. It has the right to use a common seal, *to sue and be sued, and to do any and all other corporate acts for the purpose of carrying out the provisions of this Article.*" (Emphasis supplied)

In regard to budgetary matters, Section 16 provides:

"None of the provisions of any public general law governing the preparation and filing of budgets by agencies of the State of Maryland shall be applicable to the budgetary procedure of the Commission. The budget programs and procedures heretofore followed by the Commission are ratified and confirmed and approved for use by the Commission hereafter, together with such improvements therein as in the discretion of the Commission shall be deemed necessary or appropriate in the public interest. . . ."

Section 17 provides:

"The term 'municipal corporation' in Article 11E of the Constitution of Maryland does not embrace or include the Commission or the Maryland-Washington Metropolitan District or the Maryland-Washington Regional District. The Commission and the Metropolitan District and the Regional District cannot be classified in any group of municipal corporations as required by Article 11E, and Article 11E [has] no application to the Commission or to the Metropolitan District or to the Regional District."

Sections 56-99 pertain to the Regional District as originally created by Chapter 714 and continued by Chapter 992. The entire area of Montgomery County was placed

within the Regional District, subject to certain provisions relating to municipalities. Section 57 (E) included additional areas of Prince George's County within the District and provided in paragraph (4) that:

"No municipal corporation within the areas added ... shall be authorized, by means of an amendment to its charter or otherwise to exercise any of the powers relating to planning, subdivision control and/or zoning now or hereafter granted by the said Maryland-Washington Regional District Act to the Maryland-National Capital Park and Planning Commission or the County Commissioners of Prince George's County . . . ."

A similar provision in Section 57(d)(3) applies to municipal corporations in Montgomery County.

I.

We are of the opinion that the chancellor correctly ruled that the Commission had standing to maintain the suit for declaratory relief. As we have already pointed out, Section 11 of Chapter 780 specifically granted the Commission the right to exercise all powers and functions granted to it by Chapter 780 and the right *"to sue and be sued,* and to do any and all other corporate acts for the purpose of carrying out the provisions of" Chapter 780. (Emphasis supplied) The appropriateness of declaratory relief is indicated by the controversies between the Commission and the County which go to the heart of the ability of the Commission to carry out the provisions of Chapter 780.

In this regard, we consider our decision in *Liss v. Goodman,* 224 Md. 173, 167 A. 2d 123 (1961), involving a dispute between the City Council of Baltimore City and the Board of Estimates of Baltimore in regard to certain budgetary matters, to be determinative. The Board of Estimates in *Liss* contended (as does the County in the present case) that there was no "actual controversy" between the parties, no indication of "imminent and inevitable litigation" and that the members of the City

Council had no "concrete interest" in the rights or privilege asserted by them, as required for declaratory relief under Code (1957) Art. 31A, § 6 of the Uniform Declaratory Judgments Act. In rejecting these contentions and in holding that declaratory relief was properly given, Judge Henderson, for the Court, aptly stated:

"This Court has stated that the declaratory procedure should not be used to decide purely theoretical questions or questions that may never arise. See *Tanner v. McKeldin*, 202 Md. 569, and *Kirkwood v. Provident Savings Bank of Baltimore*, 205 Md. 48. We have also stated that declarations should not be made where they would not serve a useful purpose or terminate a controversy. *Cf. Staley v. Safe Deposit & Trust Co. of Baltimore*, 189 Md. 447, and *Commissioners of Cambridge v. Eastern, etc., Co.*, 192 Md. 333. We think the question here is not theoretical but practical. The Council has asserted a right to reject or return the ordinance when submitted. To do so in the closing days of the year without a prior adjudication might well cause an impasse and seriously affect the City's financial needs and obligations. It would seem to be peculiarly appropriate to have the issue resolved in advance. Other courts have indicated that declaratory relief is appropriate where public agencies are at loggerheads. See *Marshall County Gas District v. City of Albertville*, 83 So. 2d 299 (Ala.); *Personnel Board of Mobile County v. City of Mobile*, 84 So. 2d 365 (Ala.); *Alsop v. Pierce*, 19 So. 2d 799 (Fla.); *Cummings v. Beeler*, 223 S. W. 2d 913 (Tenn.); *Hubbard v. Board of Trustees of Retirement System*, 23 N. W. 2d 186 (Mich.). See also *Borchard, Declaratory Judgments* (2d ed.), p. 889. The declaration in the instant case terminates any uncertainty caused by the assertion of its alleged rights or privileges by the Council and serves the remedial purposes set forth in Code (1957), Art. 31A, sec. 12 [providing that the 'Ar-

ticle is declared to be remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations; and is to be liberally construed and administered.'].'' 224 Md. at 177-78, 167 A. 2d at 125-26.

In the instant case, the Commission and the County are indeed "at loggerheads" and, in our opinion, declaratory relief is clearly appropriate.

## II.

We are also of the opinion that a number of justiciable issues exist which are ripe for declaratory relief. The principal controversies arise from the contention by the County that the provisions of the Prince George's County Charter (including a "Schedule of Legislation" appended to it) adopted by the voters of the county and effective on February 8, 1971, (the Charter) control various functions and personnel of the Commission. The Commission contends that Chapter 780 is a public general law and, as such, cannot be amended or superseded by the Charter. We have no doubt that these respective contentions have produced justiciable issues ripe for resolution by declaratory judgment.

Although it might possibly be sufficient to find just one justiciable issue to provide declaratory relief (which would undoubtedly shorten this opinion), we will discuss all of the controversies between the parties, so that it will appear beyond peradventure that the chancellor properly granted declaratory relief upon the various declarations in the final decree.

Chapter 732 of the Laws of 1970 (Chapter 732) merged the then existing Department of Recreation of the County with the Commission and provided that the Prince George's County Planning Board *of the Commission* (the Planning Board) should "be responsible for providing an adequate and balanced program of recreation" for the county residents "and to coordinate such program with the Commission's Park functions." The Planning Board was given various

powers and duties to accomplish a comprehensive program of recreation, the power to designate a director, and to employ necessary personnel to be placed under the Commission's merit system provided for in Chapter 780, and to adopt necessary rules and regulations.

The testimony indicated that after Chapter 732 became effective, employees engaged in recreational activities for the County left their positions, were transferred to the Commission, and were included in the Commission's merit system. They were integrated into the Commission's Department of Parks and the Office of Associate Director of Recreation was created. The Commission also assumed all responsibility for contracts and obligations of the County Department of Recreation. The recreational functions performed by the Commission were financed by a mandatory tax imposed upon the county real estate. This tax is required to be collected by the County and turned over to the Commission in accordance with the provisions of Chapter 732. If this tax is not collected and remitted to the Commission, it could not perform its responsibilities imposed by statute and continue to operate its recreational program or activities.

On March 29, 1971, the Chairman of the County Council sent a memorandum to the Chairman of the Commission questioning "whether the upcoming Recreational Department Budget should be included in the Park and Planning Commission's Budget or the County Budget." Robert H. Levan, General Counsel of the Commission, responded with his opinion that the Regional District Act (as amended by Chapter 732) was a public general law not subject to repeal or amendment by the Charter so that those taxes levied in accordance with the Regional District Act were to be collected by the County and transferred to the Commission to provide for the Department of Recreation.

The County Executive, William W. Gullett, on April 22, 1971, wrote the Chairman of the Commission that the County Executive was in the final stages of preparing the proposed budget for the Fiscal Year 1971-72 and requested receipt of "recommended changes" in the Commission's Park

and Recreation program. The letter explained "there would not be a property tax rate increase in the ensuing year" and therefore the Park and Planning budget would have to be reduced. The letter then stated certain specific changes:

"1. That the advanced land acquisition program will not be funded by a special *ad valorem* tax, and will be undertaken under the direct control of the County government unless there have been changes in this program by the General Assembly at its most recent session.

"2. That the recreation department would be structured directly under the supervision of the County Executive, as authorized by Article 25A, Section 5(v) of the Annotated Code and Section 8 of the Schedule of Legislation attached to the Prince George's County Charter."

\* \* \*

"3. That so much of the Commission's legal staff as is funded by Prince George's County will be under the direct supervision of the County Attorney. Funds that are contained in the proposed Park and Planning budget for Prince George's County in connection with this activity will be transferred to the Office of Law.

"4. Four planning positions will be transferred to the Planning Coordinator's section of the Executive Officer's Division of Administration. As is the case with the legal personnel transfers, the Park and Planning budget will be reduced accordingly. . . ."

\* \* \*

"In the meantime, I have instructed the Administrative Officer to complete the Capital Improvement Program on the premise that the County Government will provide the funds for the park development and land acquisition program."

The letter also indicated that "discretionary taxes" under the

Regional District Act would be eliminated from future budgets.

The County Executive in his budget message dated May 13, 1971, accompanying the budget for the Fiscal Year 1971-72, stated, in part:

"As a result of the adoption of the Charter, the funding and budgetary control of certain County functions became the direct responsibility of the County Government. Specifically, the budget requests of the Maryland National Capital Park and Planning Commission, Recreation, the Volunteer Fire Service and the Prince George's County Hospital were subject to the approval of the County Executive. The budget submissions of the foregoing departments and agencies have been reviewed by the County Executive and are incorporated in the proposed budget document for consideration by the County Council."

Satisfied that the above confrontations presented a justiciable issue, the chancellor, on June 7, 1971, after a hearing, issued a temporary injunction restraining the County Executive, *pendente lite*, from changing the Commission's offices, agencies and functions, except as required by fiscal exigencies. The County Executive and the County Council were further ordered to levy such taxes as they deemed appropriate, necessary and proper, and to levy the mandated taxes required by Chapter 780.

In the County Executive's budget message of June 30, 1971, accompanying the approved budget for the county for the Fiscal Year 1971-72, the temporary injunction and its effect upon the approved budget was mentioned. The County Executive stated that because of the injunction, the amounts for the Commission and the Recreation Department were not included in the County Executive's proposed budget. The budget message then illustrated the adjustments made to the approved budget to restore the mandatory and discretionary taxes to the Commission for its park and planning functions and for its recreational activities.

It is apparent, we think, from the confrontation between the County Executive and the Commission, in regard to park and planning functions and recreational activities, there was indeed a justiciable controversy ripe for a declaratory judgment. The controversy was so "ripe" for declaratory relief that the chancellor, in our opinion, properly issued the temporary injunction to prevent, *pendente lite*, grave injury to the Commission's park and planning functions and recreational activities by the county budget for Fiscal 1971-72 originally proposed by the County Executive.

Another issue involves legislative activities on behalf of the Commission. By the provisions of Chapter 780, the Commission was authorized and directed to report and make recommendations to the General Assembly in regard to legislation which might affect the Commission or the Metropolitan and Regional Districts. On the other hand, Section 1005 of the Charter provided that no official appointed by the County Executive or by the County Council could in his official capacity "recommend or request the passage or defeat of any legislation without the express prior approval of the County Executive or of the Council."

On March 19, 1971, the County Attorney wrote to the Chairman of the Commission that he had requested the General Counsel of the Commission to "clear with this Office any and all interpretations of the Charter or of the Regional District Act which were furnished to the Delegation [the members of the General Assembly from Prince George's County]. Such request was made pursuant to Section 1005 of the Charter, which forbids official lobbying without the sanction of the County Executive . . . ." It was further stated that the General Counsel for the Commission, at the direction of the Prince George's County Planning Board, had indicated that he would not comply with the request because the Commission did not "feel bound by Section 1005 of the Charter." The Chairman of the Commission, W. C. Dutton, testified in regard to the activities of the General Counsel of the Commission before the Prince George's County Delegation concerning proposed bills and their effect upon the Commission and its functions. He also testified that he

was instructed by the County Executive that "the Charter prohibits this activity in any manner."

The Commission also received a memorandum, dated February 9, 1972, from the County Executive's Chief Administrative Officer, indicating that the County Executive's Legislative Liaison, Frank Kratovil, would assist all agencies with legislative matters; that bills introduced with the General Assembly should be forwarded through the Chief Administrative Office; and, further, that a Legislative Liaison Office was being established in Annapolis which could be reached at certain hours on five days of the week.

It is clear that the County believes that the Commission is "an agency that receives and disburses County funds" and, as such, is subject to the provisions of Section 1005 of the Charter. It appears clear to us that, here again, the County and the Commission are at loggerheads in this sensitive area and that this confrontation is almost inevitable. This controversy is ripe for decision in view of the fact that the General Assembly meets every year with Legislative Council hearings occurring in between the regular sessions and the continuing nature of the Commission's functions and activities.

Another serious difficulty arose from the contemplated transfer by the County Executive of four planners of the Commission's staff to the staff of the County, purporting to act under the provisions of Section 501 of the Charter providing that, except "as otherwise provided in the Charter or in State law, all agencies of the County government shall be subject to the direction, supervision, and control of the County Executive." The testimony indicated that this contemplated change would impair the ability of the Commission to perform its statutory duties and that there was no procedure for transferring merit system employees from the staff of the Commission to the staff of the County. We have already set out an excerpt from the County Executive's letter of April 22, 1971, in which Item 4 proposes this transfer and the subsequent reduction of the Commission's budget. The transfer of the four Commission

employees was imminent so that the controversy was ripe for decision.

Another area of controversy between the County and the Commission is in regard to the Commission's power to acquire land. Section 7 of Chapter 780 authorizes the Commission to appoint a Director of Land Acquisition; Section 26 authorizes the Commission to acquire land for specific purposes and to improve and develop it; and Section 30 grants the power of eminent domain to acquire the necessary land in order to carry out the duties of the Commission.

Section 508 of the Charter, however, provides for the acquisition of land by agencies of the County "receiving or disbursing County funds" to the "extent permitted by State law." Under Section 503, the County Executive may propose by Executive Order changes in the organization of the Executive Branch including the "assignment of functions, powers and duties among agencies."

In a "Synopsis of Real Estate and Land Acquisition Functions in Prince George's County, Maryland," prepared for the County Executive, one of the proposals was:

> "It is proposed that a professional land acquisition (Real Estate) function be created responsible for all land acquisition, leasing of office space and disposal of excess land required by the County government or any department, division, county agency or utility under the control of County government."

It is clear that the County considers the Commission to be a "County agency" within the meaning of Section 508 of the Charter, as evidenced by a letter dated March 30, 1971, from the Chief of the County Bureau of Engineering to the Associate Director of Parks of the Commission. The letter included a copy of the Synopsis and requested comments and recommendations to determine the feasibility of "consolidating *all* County land acquisition in *one County* Real Estate Division." (Emphasis supplied) In our opinion,

the "proposal" in the Synopsis has reached a sufficiently definite stage to justify declaratory relief.

Another area of confrontation between the Commission and the County resulted from the effort of the County Executive to consolidate the Commission's Legal Department with the County Attorney's Office. Section 7 of Chapter 780 provides for a General Counsel for the Commission. Section 508 of the Charter provides that agencies of the County receiving or disbursing County funds shall utilize the legal services of the County; and Section 501 provides that all agencies of the County shall be subject to the "direction, supervision, and control of the County Executive."

In a memorandum dated April 6, 1971, the County Executive advised the Commission that he had "instructed the Finance Director to combine selected proposed expenditures associated with legal activities under the Office of Law." The County Executive indicated that the Commission would, effective July 1, 1971, "receive all legal services from the Office of Law" and have its budget accordingly reduced.

Item 3 of the County Executive's letter, excerpted above, repeats the proposal to consolidate with the County Attorney's Office that portion of the Commission's legal staff funded by the County. In the proposed budget message of the County Executive, dated May 13, 1971, it was stated that "seven new positions had been added to the Office of Law in an effort to centralize legal services" and that, beginning in the Fiscal Year 1972, the Office of Law would "provide *complete Legal services* to the County departments, *including*" the Commission. (Emphasis supplied) Indeed, the County Executive, on April 2, 1971, directed the Commission to dismiss its pending appeal in the case of *Prince George's County v. Laurel,* 262 Md. 171, 277 A. 2d 262, at that time pending in this Court. Upon the Commission's refusal to dismiss its appeal, the County Attorney filed a line of dismissal as to the County; and the Commission, on its own motion, was later able to have itself reinstated as a proper party to pursue the appeal. There seems little

doubt that the controversy in regard to the Commission's Legal Department is ripe for decision by declaratory judgment.

There is a substantial controversy between the Commission and the County in regard to the Commission's mandatory and discretionary park taxes within both the Metropolitan District (Chapter 780, Section 51) and the Regional District (Chapter 780, Section 93). Chapter 780 provides that each tax within each County shall be levied and collected by the respective County government and remitted to the Commission to fund the functions and activities of the Commission.

Section 1006 of the Charter provides that the County Council shall have no power to levy any *ad valorem* tax for an "agency which receives or disburses County funds." The County has interpreted this provision to prohibit the County Council from levying and collecting the taxes provided by Chapter 780 for the Commission.

The County Attorney, on May 19, 1971, advised the County Council that Art. VIII of the Charter did not permit "any agency submitting a budget request" to by-pass the County Executive and that the "document submitted by" the Commission was "not an official budget submission and may not be treated as such." We have already observed that the chancellor issued a temporary injunction in regard to the Commission's tax problem. This controversy, in our opinion, is obviously ripe for decision by declaratory judgment.

One important and continuing area of controversy between the Commission and the County relates to the Zoning Ordinance adopted for the Regional District by the District Council. The controversy revolves around five zoning problems, *i.e.*, (1) application for map amendments and for special exceptions; (2) refiling of such applications; (3) conditional zoning; (4) Section 709 of the Charter in regard to conflict of interests; and, (5) redrafting of official zoning maps. We now turn to a consideration of these controversies.

(1)

Section 30.11 of the Zoning Ordinance for the Regional

District provides for certain information on an application for a map amendment and Section 28.11 provides for specified information on an application for a special exception. Section 706 (b) of the Charter, on the other hand, requires information on both types of applications different from that required by the Zoning Ordinance. The question arose in regard to which requirements were applicable. The County Attorney advised the County Council that the Charter requirements applied to all applications filed subsequent to February 8, 1971. The Planning Board sent a form letter to 449 applicants for map amendments and also to applicants for special exceptions, then pending before the Planning Board, advising the applicants to supply the additional information required by the Charter. Thus, it is seen that applicants are required by the County to comply with the Charter provisions, rather than the Zoning Ordinance requirements, and that this controversy is ripe for decision by declaratory judgment.

(2)

The limitations of time upon the refiling of applications for map amendments and of special exceptions in the Zoning Ordinance differ substantially from such provisions in the Charter. The evidence indicates that this situation has resulted in much uncertainty and confusion both among the officials concerned and various members of the public who wish to refile applications for map amendments or for special exceptions. For example, a citizen who had three zoning applications returned by the Planning Board because of noncompliance with the Charter requested a refund of his filing fees. The Chairman of the Commission responded:

"This Commission has been and will continue to accept zoning applications in accordance with the Zoning Ordinance. It has been the opinion of our Legal Counsel that we should continue to so accept applications although they may be contrary to some provision of the New Charter for the County. It is our Legal Department's opinion that the Zoning Ordinance is controlling in such factors. Therefore,

it is this Commission's position that the filing was valid and legal.

"The District Council would have provided for the refunding of your deposit if it was their intention that such be done. I regret the situation as it now exists and hope that this matter may be cleared up as quickly as possible.

"As for your situation, I can find no relief in the Zoning Ordinance nor under the Laws which this Commission operates."

This issue is obviously ripe for resolution by a declaratory judgment.

(3)

The Regional District Act, Section 78 (e) permits the use of conditional zoning within the County and gives the District Council authority to enact an ordinance to effectuate conditional zoning. In accordance with this grant of authority, the District Council adopted Section 30.5 of the Zoning Ordinance to provide for conditional zoning under various conditions and restrictions. Section 708 (d) of the Charter prohibits conditional zoning. The County Attorney, on March 9, 1971, advised the County Executive that Section 708 (d) of the Charter controlled. The Chairman of the Commission testified that prior to the adoption of the Charter, the Planning Board had used conditional zoning in accordance with the Zoning Ordinance, but that since the adoption of the Charter, the Planning Board could not determine with any clarity whether it could continue to use conditional zoning as permitted by the Zoning Ordinance. This controversy is ripe for decision by a declaratory judgment.

(4)

The "Conflicts of Interest" provision of Chapter 780 does not require the Commissioners or its staff members to file or disclose copies of income tax returns or landownership statements. Section 709 of the Charter, however, provides that all public officials participating in a zoning case shall

file a public statement on landownership and holdings and copies of federal and state income tax returns. The County requirements have been interpreted to apply to the Prince George's County members of the Commission, the General Counsel of the Commission, the Chief Zoning Officer in the County and to others. Two letters dated March 16 and June 15, 1971, from the County Attorney reminds the Commission of the Charter requirement to file statements of landholdings and copies of federal and state income tax returns for public record. Here again, this issue is ripe for resolution by a declaratory judgment.

(5)

Sections 76 and 78 of Chapter 780 provide procedures for the redrafting of official zoning maps for the Regional District within the County. The Commission decided to redraft the official zoning maps and the project was begun in 1966. Seven draftsmen worked on the project and an outside consulting firm was paid a consulting fee of $50,000. Section 701 (c) of the Charter provides that "Comprehensive Zoning Maps" may not be adopted for an area smaller than a "planning area." The County Attorney advised the Commission that the redrafting was considered to be a comprehensive rezoning and must comply with the provisions of Section 701 (c) of the Charter in regard to planning area boundaries. As a result, the redrafting project has come to a standstill because of the uncertainty of the Commission's staff in regard to planning area boundaries. This issue is ripe for resolution by declaratory judgment.

Another important area in which there is a controversy between the Commission and the County relates to planning. The controversy revolves around two principal problems, i.e., (a) planning areas and (b) the appearance on Master Plans of the cost of public facilities. We will now consider these two areas of difficulty.

(a)

Section 63 (b) of the Regional District Act provides that

the Commission shall prepare a map showing the Regional District divided into "local planning areas" without any other restriction, whereas Section 701 (b) of the Charter adds a limitation that "planning areas" shall be "predetermined by law and shall be substantially equal in geographic size."

The evidence indicates that in an effort to reconcile, if possible, the provisions of the respective provisions, the Chairman of the Commission, on August 17, 1971, submitted to the County Executive a proposal to establish 64 planning areas ranging in size from 5.45 acres to 10.64 acres in area. The County Executive, on November 29, 1971, advised the Chairman of the Commission that the proposal "would not satisfy this requirement [of Section 701 (b)] under the Charter." The request of the County Executive for a new planning area map which would conform with the requirements of Section 701 (b) of the Charter has, in the opinion of the Chairman of the Commission, taken "a substantial amount of staff time" and has caused delays in establishing planning areas. This issue should be resolved by a declaratory judgment.

(b)

Chapter 780 does not require Master Plans to contain data on the cost of public facilities, but Section 701 (b) of the Charter provides that a Master Plan "shall contain an estimate of the cost of all public facilities . . . ." The Chairman of the Commission testified that the Master Plans proposed by the Commission for Colmar Manor and for Suitland-District Heights, after substantial work by the Commission's staff and which complied with the provisions of Chapter 780, were rejected by the County Executive as not complying with the provisions of Section 701 (b) of the Charter. Here again, this issue should be decided by a declaratory judgment.

The present case is clearly distinguishable from our recent decision in *Prince George's County, Maryland v. Board of Trustees of Prince George's Community College,* 269 **Md.**

9, 304 A. 2d 228 (1973) in which we held that there was no justiciable controversy ripe for declaratory judgment. In the *Community College* case, the County Executive of Prince George's County returned the estimated operating budget of the Community College for the Fiscal Year 1973, asking that a detailed budget request be supplied. The Community College deemed that the Charter conflicted with Maryland Code (1957, 1969 Repl. Vol.) Art. 77A, §§ 1-10. We observed that the "county at no time refused to comply with the Trustees' budget request; and, in fact, acquiesced in a *pendente lite* order which, 'without prejudice to the respective positions of the parties with respect to the matters in issue,' required the county to provide the funds budgeted by the Trustees for the college's 1973 fiscal year." We held that the *Community College* case lacked " 'the state of facts which must have accrued' to establish the requisite 'justiciable controversy.' " As we have indicated, the facts in regard to the various controversies between the Commission and the County had indeed "accrued" and establish the existence of justiciable controversies.

It thus appears that there are many justiciable issues ripe for declaratory judgment as the chancellor concluded in his opinion and indicated in Paragraph 2 of the decree of October 2, 1972. Paragraphs 4 through 15 of that decree resolved these issues in favor of the Commission by declaratory judgment.

### III.

We will now consider whether Chapter 780 is a public general law which may not be amended or superseded by the Charter, as the chancellor concluded in the decree of October 2, 1972. This determination is the foundation for the declaratory judgments on the specific issues in Paragraphs 4 through 15 of that decree. We have concluded that this decision of the chancellor was correct.

Section 4 of Article XI-A of the Constitution of Maryland prohibits the enactment by the General Assembly of a public local law for any home rule county on any subject covered by the Express Powers Act. Section 4 then provides:

"Any law so drawn as to apply to two or more of the geographical sub-divisions of this State shall not be deemed a Local Law, within the meaning of this Act. The term 'geographical sub-division' herein used shall be taken to mean the City of Baltimore or any of the Counties of this State."

Section 3 of Article XI-A provides that the law-making power of a Charter County shall be vested in an elective legislative body and then provides in part:

"From and after the adoption of a charter by . . . any County of this State, . . . the County Council of said County, subject to the Constitution and Public General Laws of this State, shall have full power to enact local laws of said City or County including the power to repeal or amend local laws of said City or County enacted by the General Assembly, upon all matters covered by the express powers granted as above provided . . . ."

Section 3 also provides, however, that Charter Counties may not enact planning or zoning laws for incorporated municipalities and, in regard to interpretation, provides:

"In case of any conflict between said local law and any Public General Law now or hereafter enacted the Public General Law shall control."

It is clear to us that Chapter 780 does "apply to two or more of the geographical sub-divisions of this State" and by the express provisions of Article XI-A, Section 4 of the Maryland Constitution is "not to be deemed a Local Law." We have previously so held in *Prince George's County v. Laurel, supra,* in which Judge Finan, for the Court, affirmed the holding of the lower court that "acts affecting the Commission are general laws, a conclusion borne out by past decisions of this Court (*City of Bowie v. Washington Suburban Sanitary Commission,* 249 Md. 611, 241 A. 2d 396 (1968); *Middleman v. Maryland-National Capital Park & Planning Commission,* 232 Md. 285, 192 A. 2d 782 (1963))

. . . ." 262 Md. at 188, 277 A. 2d at 271. *Cf. Barranca v. Prince George's County,* 264 Md. 562, 287 A. 2d 286 (1972).

The fact that a public general law "permits or directs differences in matters of mere administrative detail suited to the particular needs of the localities does not make it any less a public general law," as our predecessors observed in *Norris v. Mayor and City Council of Baltimore,* 172 Md. 667, 681, 192 A. 531, 537 (1937). Chapter 780 does contain "administrative detail" suited to the particular needs of the respective localities, but remains a public general law and, as such, is not subject to amendment or repeal by the County Council and is not superseded or modified by the Charter.

As we have indicated, the titles to Chapter 992 and Chapter 1008 (Laws of Maryland 1943) indicated that the General Assembly understood and intended that they were public general laws enacted as bi-county acts and not as public local laws of either county.

The consolidation, as it were, of these two public general laws into Chapter 780 obviously did not change Chapter 780 into a public local law!

The County earnestly contends that, as a chartered County, it was granted the power to "enact local laws, for the protection and promotion of the public safety, health, morals, and welfare relating to zoning and planning" by the Express Powers Act (Chapter 614, Laws of Maryland 1959), Code (1957, 1973 Repl. Vol.) Art. 25A, § 5 (X). Therefore, the County alleges that the provisions of the Charter in regard to planning and zoning supersede or amend inconsistent provisions under Chapter 780. This contention cannot prevail in view of the provisions of Section 2 of the Express Powers Act, itself, which states:

"Sec. 2. And be it further enacted, that in so far as the provisions of this sub-section may be inconsistent with or contrary to the provisions of the Maryland-Washington Regional District Act, . . . the provisions of this sub-section shall have no application so long as such District Act is in

force and effect and nothing contained herein
shall be deemed or construed to affect the validity
or operative effect, of said [District Act], which
established City and Regional Planning in
Montgomery and Prince George's Counties within
the limits of the Maryland-Washington Regional
District as said District is now or shall hereafter be
defined by law."
Chapter 614, Laws of Maryland 1959.

Thus, the Charter, adopted pursuant to the provisions of
the Express Powers Act and Article XI-A of the Constitution
of Maryland, is not "applicable" to the provisions of Chapter
780. This does not mean that the provisions of the Charter
are invalid or illegal. They are effective in those portions, if
any, of Prince George's County not included in the Regional
District. The County's remedy in this regard is not with the
Courts, but with the General Assembly.

The County cites three of our decisions as indicating that
we have relied upon provisions of the Charter "to adjudicate
individual zoning cases." These cases are *Prince George's
County Council v. Prestwick, Inc.*, 263 Md. 217, 282 A. 2d 491
(1971); *Heller v. Prince George's County*, 264 Md. 410, 286 A.
2d 772 (1972); and *Dal Maso v. Prince George's County*, 264
Md. 691, 288 A. 2d 119 (1972). In *Prestwick*, the appeal was
from the reversal by the Circuit Court for Prince George's
County of a resolution denying a rezoning application. The
Charter did not apply and was not relied upon; the only
reference to the Charter is found in a footnote. In *Heller*, the
appeal was from an order of the circuit court affirming the
action by the Board of County Commissioners, which
rezoned property from R-R (Rural Residential) to I-1 (Light
Industrial). Here again, the Charter is only referred to in a
footnote in the Court's opinion.

In *Dal Maso*, this Court affirmed the lower court's denial
of an application to rezone. We indicated, as a possible
alternative ground for our decision, that the case involved a
"floating zone", which was specifically prohibited by Section
708 (e) of the Charter. The Commission was not a party to

the *Dal Maso* case and the point in regard to the "floating zone" was raised in one paragraph of the County's brief, as appellee in that case. Also, the question was never raised as to whether the subject property in *Dal Maso* was included within the Regional District. Hence, the specific provision of Art. 25A, § 5 (X) of the Code, making the Express Powers Act inapplicable, was not raised for this Court's consideration and, of course, not argued, briefed or decided by us. Inasmuch as we *now* learn that the subject property involved in *Dal Maso* was indeed within the Regional District, the *dictum* relied upon by the County was incorrect and inadvertent and is no authority in support of the County's contention. The *holding* in *Dal Maso* was that the applicant had not complied with the mandatory requirements of the zoning law in regard to "floating zones"; and, therefore, the action of the District Council in rejecting the application and of the lower court in affirming that action was correct. We adhere to that holding, but, as we have indicated, disavow the *dictum*.

The County has raised thirteen contentions in its brief. Its first two contentions in regard to standing to sue and the presence of justiciable controversies ripe for declaratory judgment have already been discussed in this opinion.

The County's third contention that the provisions of the Charter are presumed to be valid, lawful, operative and applicable to the Commission and the Planning Board has, in effect, been previously considered by us, but some additional consideration by us should be made.

The Commission properly concedes that the provisions of the Charter are presumed to be valid, but also properly contends that they are presently not applicable to the provisions of Chapter 780 because of the express provisions of the Express Powers Act. The Planning Board is the Planning Board of the Commission and not of the County Council. It exists by virtue of Chapter 780 and the Charter provisions are not applicable to it.

The fourth contention of the County that the chancellor erred in not following the *Prestwick, Heller* and *Del Maso*

cases has been considered by us and decided adversely to the County.

The County next contends that the power of conditional zoning, which it states was granted solely to Prince George's County by Chapter 471 of the Laws of 1968, was no longer effective because of the enactment of Chapter 711 of the Laws of 1969 and by the enactment of the Charter, Section 708 (d), which prohibited conditional zoning.

After we had held invalid a conditional rezoning relating to land in Prince George's County in *Carole Highlands Citizens Assoc. v. Board of County Commissioners of Prince George's County,* 222 Md. 44, 158 A. 2d 663 (1960), the General Assembly enacted Chapter 471 of the Laws of 1968, amending "the laws concerning [the Commission] within Prince George's County with particular respect to amendments to zoning regulations" and providing:

"59-83 (g)

"(1) In approving any local map amendment after July 1, 1968, under this Section, the District Council for Prince George's County, may give consideration to and adopt such reasonable requirements, safeguards, and conditions, as may in its opinion be necessary either to protect surrounding properties from adverse effects which might accrue from such zoning amendment, or which would further enhance the coordinated, harmonious, and systematic development of the Regional District. * * * The District Council may adopt such ordinances and regulations as may in its discretion be necessary to provide adequate notice, public hearings, and enforcement procedures for the implementation of this Section."

The Board of County Commissioners in January 1969 adopted an amendment to the Zoning Ordinance implementing the conditional zoning authorized by Chapter 471.

By Chapter 711 of the Laws of 1969, the General Assembly repealed Section 59-83 (which the County contends

included Section 59-83 (g) quoted above) and provided, in part:

> "Both districts and zones may be created; all such regulations shall be uniform for each class or kind of building throughout any district or zone, but the regulations in one district or zone may differ from those in any other district or zone."

This, the County argues, restored the Regional District Act to the same uniformity provisions as were before this Court in *Carole Highlands*.[1]

The County's contention that Chapter 471 of the Laws of 1968 was repealed by Chapter 711 of the Acts of 1969 is concluded against the County by our decision in *Prince George's County v. McBride*, 263 Md. 235, 282 A. 2d 486 (1971) as the chancellor properly held. In *McBride*, we held that inasmuch as Chapter 711 expressly repealed only the law as it existed in the *1963 edition* of the local laws and the *1967 supplement*, it did not repeal the amendments to the section enacted in 1969. This holding is equally applicable to the contention that Chapter 471 of the Laws of 1968 was repealed by Chapter 711 as Chapter 471 was enacted after the 1967 supplement.

From what we have already stated, the provision of the Charter in regard to conditional zoning is inapplicable to the power granted by Chapter 471, a public general law granting certain zoning powers to a District Council within the Regional District. Chapter 471 is not converted into a public local law merely because its impact is upon that portion of the Regional District lying within Prince George's County. *See Norris v. Mayor & City Council of Baltimore, supra.*

The sixth question raised by the County relates to whether the Prince George's County Planning Board is a "local body"

1. The County also suggests that a municipal corporation has no power to bargain away its police power and to attempt this is offensive to the requirements of due process of law. The chancellor declined to express his opinion on the constitutional contention because the County had not offered any constitutional objection to Chapter 471 during the course of the trial. Not having preserved this point for appellate review, we will decline to consider it. Maryland Rule 885.

subject to the provisions of the Charter and regulations enacted and promulgated pursuant to the Charter. The County's theory is that regardless of whether Chapter 780 is a public general law so far as the Commission may be concerned, the Planning Boards for the portions of the Regional District situated in each county are local agencies and should be subject to local regulations.

Here again, the County confuses local functions and responsibilities with local laws. Chapter 780, a public general law, does provide for *local functions* and does impose *local responsibilities;* but, as we have already indicated, such provisions do not change Chapter 780 from a *public general law* to a *public local law,* and make the Planning Boards subject to the Charter and local regulations. Chapter 780 is by no means unique in its application of a public general law to local situations. For example, we have held that the public general laws relating to the road system of the State may not be interfered with or controlled by local laws enacted by counties or municipalities, even though a bridge or segment of road is "local." *Wyatt v. State Roads Commission,* 175 Md. 258, 1 A. 2d 619 (1938). Also, individual segments of streetcar lines, fares and taxes were "local" in Baltimore City and Baltimore County, but we held that the public general law (Chapter 670 of the Laws of 1961) creating and granting powers to the Metropolitan Transit Authority was immune from repeal or amendment by public local laws. *Baltimore Transit Co. v. Metropolitan Transit Authority,* 232 Md. 509, 194 A. 2d 643 (1963). More recently, we held that the City of Bowie could not repeal the Regional authority of the Washington Suburban Sanitary Commission under Chapter 122 of the Laws of 1918, as amended, notwithstanding the fact that the Sanitary Commission — Bowie sewage treatment facilities are "local." *Bowie v. Washington Suburban Sanitary Commission,* 249 Md. 611, 241 A. 2d 396 (1968).

The seventh and eighth questions presented by the County relate to the *ad valorem* taxes for the Commission and the Planning Board and may be considered together.

The County first contends that the provision of Chapter

780 requiring the County to levy *ad valorem* taxes against real property in those portions of the Regional District and Metropolitan District lying within Prince George's County is unconstitutional as violating Article 15 of the Declaration of Rights of the Constitution of Maryland, requiring uniformity within a taxing District.

Article 15 of the Declaration of Rights provides in part that:

> "[T]he General Assembly shall, by uniform rules, provide for the separate assessment, classification and sub-classification of land, improvements on land and personal property, as it may deem proper; and all taxes thereafter provided to be levied . . . by the Counties . . . shall be uniform within each class or sub-class . . . ."

The County contends that the Regional District is a taxing District and that the Metropolitan District is also a taxing District with a *single* taxing authority. The County argues that inasmuch as the *ad valorem* taxes in the portions of the Districts in the respective counties are different, they are unequal and violate the provisions of Article 15 of the Declaration of Rights. There are two errors in this argument, *i.e.*, (1) there is no single taxing authority for the Regional and Metropolitan Districts and (2) these Districts were not created as *taxing* Districts by Chapter 780, the Regional District being created to administer planning and zoning and the Metropolitan District to administer the park system. Each District within each county is funded by a tax levied by each county within its portion of the District and the tax is uniform throughout each county's applicable jurisdiction for the services and programs provided by Chapter 780. There is no legal requirement that services rendered by the Commission in each county be equal and there is no law which requires that the tax levied in each county to pay for the services be equal. Thus, the *ad valorem* tax levied by each county within the District in that county's taxing jurisdiction is uniform and is not in conflict with the provisions of Article 15 of the Declaration of Rights.

The County's other attack on the *ad valorem* taxes is that the levying of such taxes is subject to the limitations contained in Section 1006 of the Charter, which provides:

> "Except as required by State law or the terms of any certificate of indebtedness outstanding on the effective date of this Charter, the Council shall have no power to levy any *ad valorem* tax on real or personal property for the benefit of any particular agency which receives or disburses County funds. Any *ad valorem* tax on real or personal property, with the aforementioned exceptions, shall accrue only to the general fund of the County."

The resolution of this issue turns initially upon a determination of whether the Commission and its County Planning Board are "agencies" which receive or disburse County funds. We have concluded, as did the chancellor, that they are not such "agencies." The taxes levied, collected and remitted by the County to the Commission, pursuant to Chapter 780 as a public general law, cannot be considered as "County funds" regardless of the language of Section 804 (b) of the Charter, which provides:

> "(b) The term 'County funds' shall mean any monies received by the County or appropriated or approved by the Council or to which the County may at any time have legal or equitable title."

As we have indicated, the Charter cannot supersede or amend the provisions of a public general law so that the *ad valorem* taxes levied, collected, appropriated for and remitted to the Commission are not "County funds"; the Commission and the Planning Board are not "County agencies."

The tenth question concerns the adoption of Section 8 of the Schedule of Legislation appended to the Charter which professes to establish a County Department of Recreation. The County contends that Section 8 repealed Chapter 732 of the Laws of 1970 and returned to the County direct control of the Recreation Department. Again, we disagree with the

County. As discussed above, Chapter 732 of the Acts of 1970 was an Act:

> "... to provide for the transfer, regulation, operation and maintenance of all recreation functions, programs, facilities, and merit system personnel of the Prince George's County Recreation Department by and to The Maryland-National Capital Park and Planning Commission, to establish the taxing authority thereto, and to provide a program of recreation within Prince George's County and the coordination of such program with the Commission's Park functions."

This Act charged the Planning Board *of the Commission* with the responsibility of "providing an adequate and balanced program of recreation to serve the varied needs and interests of the several age groups among the residents of Prince George's County *and to coordinate such program with the Commission's park functions.*" (Emphasis supplied) The Planning Board and the Commission are not separate entities. It is clear to us that Chapter 732 is a public general law and is not subject to amendment or repeal by Section 8 of the Schedule of Legislation appended to the Charter.

The County relies upon *Prince George's Co. v. Donohoe*, 220 Md. 362, 152 A. 2d 555 (1959) for its contention that Chapter 732 is a public local law. In our opinion, this reliance is misplaced. *Donohoe* involved the sufficiency of the title to Chapter 712 of the Laws of 1957, amending zoning procedure within the Regional District within Prince George's County. It was argued in *Donohoe* that because the Regional District Act was a bi-county act, any amendment thereto also had to be a bi-county act. Therefore, the argument continued, the title to Chapter 712 was insufficient because it failed to mention that it amended the Montgomery County Code, as well as the Prince George's County Code. We found these arguments to be untenable in that amendments to the Regional District Act need not be bi-county acts and there was no requirement to amend the Montgomery County Code since Chapter 712 applied solely to Prince George's County. Chapter 732, however, amended *both* the Montgomery

County Code and the public local laws of Prince George's County so that Donohoe is clearly distinguishable from the instant case.

Questions 11 and 13 relate to whether Sections 1005 and 709 of the Charter, discussed above, apply to members of the Planning Board. These provisions do not amend or supersede the provisions of Chapter 780, a public general law; and the Planning Board is not an agency receiving and disbursing County funds for the reasons we have stated so that these sections do not apply to the Planning Board.

Question 12 relates to whether Section 313 of the Charter relating to auditing is applicable to funds provided by the County to the Planning Board. In Paragraph 9 of the decree of October 2, 1972, the chancellor declared that neither the Commission nor the Planning Board was "an agency which receives or disburses County funds" and, therefore, is not subject to that section. In Paragraph 18, however, of the decree of October 2, the chancellor declared that, pursuant to Chapter 898, Sec. 18-1 (B) 8 of the Laws of 1965, the Internal Auditor of the county, at the request of the President of the Board of County Commissioners, may examine the financial operations of the Commission in any year in which it receives funds from the budget of the Board of County Commissioners, or its successors in title and function, or from the county tax revenue as approved by the Board of County Commissioners, or its successors in title and function.

We perceive no inconsistency between Paragraphs 9 and 18. The auditing function relates *only* to money from the County budget and does not relate to the separate funds of the Commission.

The County in its argument also contends that the County may require the Planning Board to use the staff services of the County for legal services, budgeting, accounting, preparing data processing, public releases and other services, pursuant to Section 508 of the Charter.

As we have indicated, the Planning Board has no employees and receives all of its staff services from employees of the Commission, pursuant to Chapter 780, a

public general law, the provisions of which cannot be amended or superseded by the Charter. *Barranca v. Prince George's County, supra.*

The County generally argues, with much earnestness, that the present legal situation in Prince George's County leads to duplication, waste and a frustration of the will of the electorate as expressed in the Charter. These arguments may have appeal if made to the General Assembly for amendments to Chapter 780, but they are matters over which the Courts of this State properly have no control.

> *Decree of October 2, 1972, affirmed, the appellant to pay the costs.*

### APPENDIX: Final Decree of October 2, 1972

"Upon the Bill of Complaint and Answer thereto and all other pleadings filed herein, and after trial in Open Court on the 27th of March, 1972, at which time all parties were represented by Counsel and had the opportunity to introduce evidence, and upon consideration of the evidence, arguments and memoranda filed herein, together with the Opinions of the Court heretofore filed, it is this *2nd* day of October, 1972, by the Circuit Court for Prince George's County, Maryland, Sitting as a Court of Equity, ADJUDGED, ORDERED and DECREED as follows:

"The Court makes the following declarations with reference to the relationship, legal status, rights, duties and responsibilities of The Maryland National Capital Park and Planning Commission, Prince George's County, said Laws of the Park and Planning Commission (the Maryland-Washington Regional District Act and Maryland-Washington Metropolitan District Act) being Chapter 780, Laws of Maryland 1959, as amended, and the Prince George's County Charter, and such other statutes, ordinances and regulations as shall be herein mentioned:

"1. The Maryland National Capital Park and Planning Commission (hereinafter referred to as the Commission) has the authority and standing to sue for Declaratory Judgment herein.

"2. There is a justiciable controversy between the Commission and Prince George's County (hereinafter referred to as the County) involving concrete interests for determination by declaratory relief pursuant to Article 31A, Annotated Code of Maryland, 1957.

"3. The Maryland-Washington Regional District Act as enacted by Chap. 780, Laws of Maryland 1959, as amended, is a Public General Law.

"4. The County may not exercise the powers of planning and zoning within the 'Regional District' and that provisions of Art. VII of the Prince George's County Charter are not applicable to that portion of Prince George's County within the 'Regional District'.

"5. Sec. 709 — *Conflicts of Interest* — of the Prince George's County Charter does not apply to the members of the Commission nor to its employees.

"6. The Commission and the Prince George's County Planning Board are not 'agencies which receive and disburse County funds' within the meaning of that phrase as used in Sec. 1005 of the Prince George's County Charter and are not subject to the provisions of that Section.

"7. The mandatory *ad valorem* recreation tax provided in Chap. 732, Laws of Maryland 1970, must be levied and collected by the Prince George's County Council and the proceeds thereof remitted to the Prince George's County Planning Board of The Maryland National Capital Park and Planning Commission as provided by law.

"8. The County cannot compel a merger of the Legal Staff of the Commission with the Legal Staff of the County, nor can it deduct from funds due the Commission the costs of legal services and provide the same in kind through the Office of the County Attorney.

"9. That neither the Commission nor the Prince George's County Planning Board is an 'agency which receives or disburses County funds', as that terminology is used in Sec. 313 — *Office of Audits and Investigation* — of the Prince George's County Charter and are, therefore, not subject to the requirements of that Section of the Charter.

"10. That neither the Commission nor the Prince George's County Planning Board is subject to the provisions of Sec. 501 of the County Charter, and Prince George's County may not, therefore, by Executive Order or otherwise direct a transfer of personnel in the staff positions of the Commission or the Prince George's County Planning Board.

"11. Funds derived from special *ad valorem* taxes levied by the County, pursuant to the provisions of Chapter 780, Laws of Maryland, are not 'County funds' as defined in Sec. 804(b) of the Charter, and neither the Commission nor the Prince George's County Planning Board is an 'agency which receives or disburses County funds' as that term is used in Sec. 804(a) of the Charter.

"12. That neither the Commission nor the Prince George's County Planning Board is subject to the provisions of Sec. 806 — *Formulation of Capital Budget and Capital Program* — of the Prince George's County Charter.

"That neither the Commission nor the Prince George's County Planning Board is subject to the provisions of Sec. 807 — *Formulation of Current Expense Budget* — of the Prince George's County Charter.

"13. Prince George's County must annually levy and remit to the Park and Planning Commission all mandatory *ad valorem* taxes required by Chapter 780, Laws of Maryland 1959, as amended. The County may levy in the form of special *ad valorem* taxes those discretionary *ad valorem* taxes authorized by Chapter 780, Laws of Maryland 1959, as amended. The funds derived from such taxes are not 'County funds' as that term is used in the County Charter; and that proceeds of such taxes may not be included in the general fund of Prince George's County. The *ad valorem* tax rate set by the Montgomery County Council within the Regional District within Montgomery County and the *ad valorem* tax rate set by the Prince George's County Council within the Regional District within Prince George's County are both uniform within the portions of the Regional and Metropolitan Districts lying within each County. The provisions for levying of *ad valorem* taxes as provided by Chapter 780, Laws of Maryland 1959, as amended, are not

unconstitutional under the provisions of Article XV of the Declaration of Rights to the Constitution of Maryland.

"14. Neither the Commission nor the Prince George's County Planning Board is an 'agency' within the meaning of Section 1017(m) of the Prince George's County Charter.

"15. Chapter 471, Laws of Maryland 1968, which amends Chapter 780, so as to enable conditional zoning within the Regional District in Prince George's County, is part of the Public General Law (Chapter 780, Laws of Maryland 1959, as amended) and, therefore, not affected by the adoption of the Charter. In addition thereto, the Court declares that Chapter 471, Laws of Maryland 1968, was not repealed by Chapter 711, Laws of Maryland 1969, therefore, conditional zoning may be employed in zoning map amendment cases arising in Prince George's County, pursuant to the provisions of Chapter 471, Laws of Maryland 1968, notwithstanding the uniformity provisions of Chapter 711, Laws of Maryland 1969, and the provisions of Section 708(d) of the County Charter prohibiting such zoning.

"16. The Prince George's County Planning Board is subject to the budget and fiscal procedures and the purchasing laws and regulations of Prince George's County by virtue of the provisions of Chapter 97, Laws of Maryland 1970, and specifically Section 231-L, enacted therein, when and if the said Planning Board receives more than one-half of its operating expenses from Prince George's County, exclusive of the proceeds of mandatory and discretionary *ad valorem* taxes authorized by Chapter 780, Laws of Maryland 1959.

"17. The Defendants, County Executive, County Council, District Council and the individually named members thereof are not proper party Defendants and they are hereby dismissed as party Defendants.

"18. That pursuant to Chapter 898, Sec. 18-1(B)8, Laws of Maryland 1965, the internal auditor of Prince George's County, or his successor in title and function, at the request of the President of the Board of County Commissioners, or his successor in title and function, may examine the financial operations of the Plaintiff in any year in which it

receives funds from the budget of the Board of County Commissioners, or its successors in title and function, or from the County tax revenues as approved by the Board of County Commissioners, or its successors in title and function.

"With respect to the character of the funds received by the Plaintiff, the Court reaffirms its declarations Numbered 11 and 13; and it is further

"ADJUDGED, ORDERED and DECREED that all injunctive Orders previously issued by the Court herein BE and they ARE hereby vacated; and it is further

"ORDERED and DECREED that each party hereto shall pay one-half (1/2) of the costs of these proceedings."